**Opinion issued August 22, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00375-CV

———————————

## MARK SWANBERG, Appellant

## V.

## ANDREW SWANBERG AND JENNIFER SWANBERG, Appellees

---

**On Appeal from the 245th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-19881**

---

## MEMORANDUM OPINION

This case arises from the attempt of a grandparent, Mark Swanberg, to obtain sole managing conservatorship of his young grandchild. The child's divorced parents, Andrew and Jennifer Swanberg, filed a plea to the jurisdiction seeking dismissal based on Mark's lack of standing. The trial court granted the

plea, dismissed Mark's suit, and, after a hearing, granted Andrew and Jennifer's motion for sanctions. Because the trial court was presented with evidence showing that the child's present circumstances were not significantly impairing her health or development, we affirm the trial court's order dismissing the suit. *See* TEX. FAM. CODE ANN. § 102.004 (West 2008). We reverse the sanctions order.

## Background

Andrew and Jennifer divorced in 2010, and they agreed to share custody of their young daughter. Jennifer retained the right to determine residency. More than a year later, Andrew's father, Mark, filed a petition to modify that parent-child relationship, seeking appointment as his granddaughter's sole managing conservator. Mark and his wife Paula had often taken care of the child after the divorce, although they lived several hundred miles away from her and Jennifer. In his petition, Mark requested a temporary restraining order giving him access to the child and her medical information, while denying possession to the child's parents. He alleged that the child's present circumstances would significantly impair her health and development, but he provided no details supporting that assertion until he filed a separate affidavit more than two weeks later. Andrew and Jennifer filed a plea to the jurisdiction challenging Mark's standing to bring suit and moving for sanctions for filing improper pleadings.

2

After a hearing on the plea to the jurisdiction, the trial court dismissed Mark's suit. The trial court expressed concern that the only factual allegations supporting Mark's standing were contained in his affidavit, which was not file-stamped and was not served on Andrew and Jennifer with the petition. A month later, the trial court conducted a hearing on Andrew and Jennifer's motion for sanctions against Mark and his attorney. The court awarded attorney's fees to Andrew and Jennifer as a sanction under the Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 10.001, 10.004 (West 2002).

The next month, Mark filed a motion to reconsider the sanctions award, arguing he should have had the opportunity to present testimony to support his standing claim. The trial court held hearings on the issues of Mark's standing and sanctions, treating the reconsideration motion as a motion for new trial. *See* TEX. R. CIV. P. 329b(d) (providing that the trial court has plenary power to modify and correct its judgments).

At the hearing and in affidavits, Mark made several allegations supporting his contention that the child's circumstances would significantly impair her physical health and mental development. He testified that Jennifer and the child's main residence, Jennifer's grandmother's house, was a rural location with old car parts strewn about the yard. He also complained that after Jennifer allowed him and his wife to take the child for visits, Jennifer would ask them to return the child

3

to her at numerous different locations—sometimes in San Antonio, sometimes at restaurants in Katy, sometimes at the child's other grandparents' residences. Several times, Mark and his wife had returned the child to Jennifer's grandmother or aunt because Jennifer was not present to pick her up. Mark generally alleged that Jennifer's living conditions were chaotic: Jennifer had told him she and the child stayed with several different men, one time at a hotel. He felt the movement from house to house was harmful to the child. His wife testified that once Jennifer had told her that she had not seen the child for three months.

Mark also had complaints concerning the child's physical condition. Once after picking the child up from Jennifer, he took her to the doctor to get a boil lanced and to obtain treatment for a staph infection. He testified that three or four times when he and his wife picked up the child for a visit, the child had a fever or flu. Mark had purchased medications on multiple occasions to treat the child's flu and yeast infections. Mark had informed Jennifer of these ailments and obtained her permission to treat the child. He and his wife testified that the child often looked unkempt and dirty, smelling of cigarette smoke. He saw that some of the child's baby bottles had mold on them.

To rebut Mark's allegations, Andrew and Jennifer presented several pieces of evidence. They introduced pictures of the child taken at the same time that Mark alleged she was dirty. The parents also introduced pictures of Jennifer's

4

grandmother's house, the alleged "junkyard," that showed a wooded yard free from any car parts or junk. Patty Norrell, Andrew's mother and Mark's former wife, testified that the house where Jennifer and child usually resided was a "nice" house with hardwood floors. She said that she had never seen the child appearing dirty and that the child knows the alphabet, nursery rhymes, directions, and other information that a child of her age would normally know. Andrew denied having any concerns about the child's appearance, health, or mental development, although he acknowledged he would often return the child to someone other than Jennifer when his periods of possession were over.

Jennifer's testimony also contradicted many of Mark's allegations. According to her, there had never been a period when she had not seen the child for three months. The longest she had spent nights away from the child was for 11 days when the child was staying with Mark and Paula. Other than that, she had spent four or five nights in a row apart from the child for a period around October 2011 when the lawsuit was filed, because she did not have a car and the child was staying with Jennifer's mother, far from Jennifer's work. She had never taken the child with her to stay at a stranger's house. Although she had stayed at a friend's house for a month, she testified that she was alone there with the child, house-sitting. She explained that she had often not been present when Mark or Andrew returned the child because she works until 8 p.m. She also testified that she did not

5

smoke in the car or house around the child. There was a time when the child's booster shots were delayed, but that was due to medical advice Jennifer received from a doctor informing her to wait until the child was no longer sick to administer her shots.

After the hearings, the trial court found that Mark had failed to establish standing. Accordingly, it denied his motion for reconsideration. Mark then brought this timely appeal.

<b>Analysis</b>

## I. Standing

Standing, which is implicit in the concept of subject-matter jurisdiction, is a threshold issue in a child custody proceeding. *See In re SSJ-J*, 153 S.W.3d 132, 134 (Tex. App.—San Antonio 2004, no pet.); *see also Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993). Whether a party has standing to pursue a cause of action is a question of law, which we review de novo. *SSJ-J*, 153 S.W.3d at 134.

When standing to bring a lawsuit has been conferred by statute, we use that statutory framework to analyze whether the petition has been filed by a proper party. *Atty. Gen. of Tex. v. Crawford*, 322 S.W.3d 858, 862 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). In a suit affecting the parent-child relationship, the Texas Family Code governs the issue of standing. *In re N.L.D.*, 344 S.W.3d 33, 37

(Tex. App.—Texarkana 2011, no pet.). Section 102.004(a)(1) grants standing to a grandparent in a suit affecting a parent-child relationship "if there is satisfactory proof to the court that . . . the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development." Tex. Fam. Code Ann. § 102.004(a)(1); *see also id.* § 156.002(b) (West Supp. 2012) (granting standing to file suit to modify an order that provides for the conservatorship, support, or possession of and access to a child if the person has standing under chapter 102).

The party seeking relief must allege and establish standing within the parameters of the language used in the statute. *In re A.C.F.H.*, 373 S.W.3d 148, 150 (Tex. App.—San Antonio 2012, no pet.). Thus, in order for grandparents to establish the right to sue for custody of a grandchild pursuant to section 102.004(a)(1), the court must make a threshold finding of serious and immediate concern for the welfare of the child based upon a preponderance of the evidence. *In re R.D.Y.*, 51 S.W.3d 314, 325 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *see also In re A.M.S.*, 277 S.W.3d 92, 96 n.4 (Tex. App.—Texarkana 2009, no pet.). The child must be in imminent danger of physical or emotional harm for there to be a serious question concerning the child's physical health or welfare. *Id.* (citing *McElreath v. Stewart*, 545 S.W.2d 955, 958 (Tex. 1977)). If a party fails to establish standing, the trial court must dismiss the suit. *N.L.D.*, 344

S.W.3d at 37. When no findings of fact and conclusions of law are requested and filed, as in this case, we infer from the judgment of the trial court that all necessary findings exist to support it, provided that the proposition is raised in the pleadings, supported by evidence, and the trial court's theory is consistent with the evidence and the applicable law. *N.L.D.*, 344 S.W.3d at 38.

The trial court's judgment dismissing Mark's suit for lack of standing was consistent with the evidence and applicable law. He was required to show by a preponderance of the evidence that the child's present circumstances would significantly impair her physical health or emotional development. *See* TEX. FAM. CODE ANN. § 102.004(a)(1). The trial court could have determined that Mark's evidence failed to prove that the child's circumstances posed such a threat to her development. Both sides acknowledged at the hearing that all of the child's illnesses were treated effectively and none were more serious than a staph infection, which was treated with Jennifer's consent. The child was provided with health insurance. When Jennifer was unable to pick the child up in person, there was always a family member to care for her. Disputed out-of-court statements of what Jennifer allegedly had said to Mark or his wife were the only evidence that Jennifer and the child stayed with non-relatives or that Jennifer went for long periods without seeing the child. Jennifer's testimony specifically addressed these allegations, and she denied spending longer than a week away from the child or

8

ever having stayed with strangers. Mark did not present any evidence that the child suffered from emotional or intellectual problems. On the contrary, Jennifer and Andrew presented evidence that the child was happy and was prepared to go to preschool. This evidence supports the trial court's determination that a preponderance of the evidence did not raise a serious and immediate concern for the welfare of the child. *See R.D.Y.*, 51 S.W.3d at 325.

Generally, a grandparent must present evidence of more serious abuse or neglect to demonstrate standing. *See N.L.D.*, 344 S.W.3d at 38–39 (parent failed to submit to drug test, left messages suggesting current drug use, admitted to past methamphetamine use, left child at grandparent's house without food or diapers, failed to take child to doctor although child had heart condition, and mother was physically abusive toward father); *In re Vogel*, 261 S.W.3d 917, 920, 922 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (grandmother demonstrated that father was alcoholic, removed child from mother's funeral inappropriately, admitted he could not provide for child's financial needs, and presented testimony that it would be harmful for child to live with father); *R.D.Y.*, 51 S.W.3d at 318–19, 324–25 (mother had serious mental health problems, attacked grandmother, clothed child in same clothing day after day, child's home was filled with trash and maggot-infested, and mother was in "bleak financial situation"); *see also In re McDaniel*, No. 01-11-00711-CV, 2011 WL 4926002, at *2–*5 (Tex. App.—Houston [1st

Dist.] Oct. 11, 2011, no pet.) (grandparent, who was a psychiatrist, alleged parents allowed violent physical beatings, yelled at child, and caused child's demeanor to become withdrawn and sad); *In re Reed*, No. 06-11-00066-CV, 2011 WL 3332105, at *3 (Tex. App.—Texarkana Aug. 4, 2011, no pet.) (grandfather presented evidence that mother had history of cruelty to children, mother's boyfriend abused dog, children had whelps and bruises, mother's house was filthy, mother feared leaving daughter alone with boyfriend, and boyfriend had thrown children around).

In contrast, trial courts do not err when they deny standing to grandparents who have presented only unsupported allegations of neglect or speculation that a child's well-being is at risk. *See In re M.J.G.*, 248 S.W.3d 753, 759–61 (Tex. App.—Fort Worth 2008, no pet.) (holding grandparents lacked standing when evidence presented was mere assertions that father was violent, that the children were emotionally attached to grandparents because they had stayed at grandparents' home with their mother, and that the children had medical needs); *see also Svoboda v. Svoboda*, No. 03-09-00189-CV, 2009 WL 3151336 at *6 (Tex. App.—Austin Oct. 1, 2009, no pet.) (trial court erred in determining children's present circumstances posed danger to their development when evidence of impairment was merely that mother imposed limits on grandmother's contact with children and grandparent's opinion that children had insufficient support in coping with father's death).

In the similar context of a grandparent access suit, proving significant impairment of a child's physical health or emotional well-being is a "high threshold." *See In re Derzapf*, 219 S.W.3d 327, 334 (Tex. 2007); *see also In re Scheller*, 325 S.W.3d 640, 643 (Tex. 2010) (proving that children's mental and physical health would suffer is a "hefty statutory burden"). "So long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family." *In re Mays-Hooper*, 189 S.W.3d 777, 778 (Tex. 2006) (quoting *Troxel v. Granville*, 530 U.S. 57, 68, 120 S. Ct. 2054 (2000)).

Mark argues that he has presented sufficient evidence because "standing does not mean the right to win; it is only the right to be heard." *SSJ-J*, 153 S.W.3d at 138. But the right to be heard in this context is predicated on a threshold showing of significant impairment. *See* TEX. FAM. CODE ANN. § 102.004(a)(1). Mark's strongest evidence supporting standing consists of his own allegations of Jennifer's possible neglect and the fact that she does not have a residence of her own. We conclude that the trial court acted within its discretion by concluding that Mark failed to show by a preponderance of the evidence that the child's circumstances presented a danger to her welfare.[1]

---

[1] In his brief, Mark also challenges the trial court's initial order granting Andrew and Jennifer's plea to the jurisdiction due to procedural defects in Mark's original petition. The trial court, however, granted Mark's motion to

11

## II.    Equal protection

Mark next argues that the child was denied equal protection under law because the trial court did not grant a continuance to develop medical testimony. He argues that had the child been involved in a suit filed by Department of Family and Protective Services, she would have received physical and clinical evaluations.

An appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities." TEX. R. APP. P. 38.1(i).   We are not responsible for conducting the legal research that might support a party's contentions when a party fails to provide existing legal authority that can be applied to the facts of the case. *Bolling v. Farmer's Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 895 (Tex. App.—Dallas 2010, no pet.).   "References to sweeping statements of general law are rarely appropriate." *Id.* at 896.   Issues raised on appeal, but not properly briefed, are waived. *Morris v. Am. Home Mortg. Servicing, Inc.*, 360 S.W.3d 32, 36 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Beyond referencing the state and federal constitutions, Mark provides no citations to authority or cogent argument to support his suggestion that a child is denied equal protection of the law when a grandparent seeks managing conservatorship in

reconsider sanctions and held a hearing on the standing issue, in effect also reconsidering its prior grant of the plea to the jurisdiction.   Therefore, Mark's complaint about the trial court's alleged procedural error in initially granting the plea to the jurisdiction is moot.

a private suit and is not provided with the same evaluations as the Department of Family and Protective Services would provide.

Nor has Mark has preserved any error with respect to his argument that the trial court should have granted him a continuance to obtain testimonial evidence. As a prerequisite to presenting a complaint for appellate review, the record must show that a timely complaint was presented to the trial court, the complaint complied with the rules of procedure, and the trial court ruled on the complaint. TEX. R. APP. P. 33.1. During their testimony, Mark and his wife stated their desire to get medical evidence from the child's hospital in Katy. However, the Texas Rules of Civil Procedure require that a motion for continuance seeking time to obtain evidence to be supported by an affidavit that describes the evidence sought, explains its materiality, and shows that the party requesting the continuance has used due diligence to timely obtain the evidence. TEX. R. CIV. P. 251, 252; *see Landers v. State Farm Lloyds*, 257 S.W.3d 740, 747 (Tex. App.—Houston [1st Dist.] 2008, no pet.). As his briefing was inadequate and he presented no such affidavit or request for continuance that the trial court ruled upon, we overrule Mark's equal protection issue.

## III. Sanctions

Finally, Mark challenges the trial court's award of sanctions against him in the form of an award of attorney's fees. We review a trial court's decision to

13

impose sanctions under an abuse of discretion standard. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *Thielemann v. Kethan*, 371 S.W.3d 286, 294 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

The trial court found that Mark's petition to modify the parent-child relationship was brought in violation of section 10.001(2) of the Civil Practice and Remedies Code, and it awarded reasonable attorney's fees under section 10.004. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.004(c)(3) (authorizing sanctions to include an order to pay the other party's reasonable expenses incurred by the other party). Section 10.001(2) requires that each legal contention in the pleadings or motions be warranted by existing law or a non-frivolous argument for a change of existing law. *Id.* § 10.001(2). But section 10.004(d) specifically provides that "[t]he court may not award monetary sanctions against a represented party for a violation of Section 10.001(2)." *Id.* § 10.004(d); *see also Benavides v. Knapp Chevrolet, Inc.*, No. 01-08-00212-CV, 2009 WL 349813, at *5 (Tex. App.—Houston [1st Dist.] Feb. 12, 2009, no pet.) (overturning sanctions award under chapter 10 when trial court's monetary sanctions "could only have been based on section 10.001(2)"). Because the order awarded sanctions based on a violation of

section 10.001(2) and Mark was represented by counsel when he filed his petition, the monetary award against him was a violation of section 10.004(d).

Accordingly, we hold that the trial court abused its discretion in imposing sanctions against Mark under chapter 10.

## Conclusion

We affirm the judgment of the trial court that Mark lacked standing to petition to modify the parent-child relationship. We reverse the trial court's order imposing sanctions against Mark. All pending motions are dismissed as moot.


Michael Massengale
Justice

Panel consists of Justices Keyes, Massengale, and Brown.