**In re Ricky DERZAPF, Relator.**

No. 06–0669.

Supreme Court of Texas.

March 23, 2007.

Thomas M. Michel, Griffith, Jay, Michel & Moore, L.L.P., Fort Worth, David K. Phillips, Wichita Falls, and Lorri Michel, Michel Law Firm, P.C., Austin, for Relator.

Richard R. Orsinger, McCurley, Orsinger, McCurley, Nelson & Downing L.L.P., San Antonio, Randall Scott Downing and Brad M. LaMorgese, McCurley, Orsinger, McCurley, Nelson & Downing, L.L.P., Dallas, TX, for Real Party in Interest.

PER CURIAM.

In 2005, the Legislature substantially amended the grandparent access statute, codified at Family Code sections 153.432–34. The statute now includes a presumption that a parent acts in his child's best interest, and it permits biological or adoptive grandparents to obtain court-ordered access to a grandchild only if they show that denial of access will "significantly impair the child's physical health or emotional well-being." *Id.* § 153.433(2). We conclude that the trial court abused its discretion in awarding access here because the step-grandfather is neither a biological nor an adoptive grandparent, and the grandmother did not overcome the statutory presumption favoring the children's father. We conditionally grant mandamus relief.

## I

Ricky and Jennifer Derzapf were married in the mid–1990s. They had two sons, B.G.D.,[1] age 15, and A.J.D., age 10, as well as one daughter, J.B.D., age 6. Jennifer

---

1. Although B.G.D. is not Ricky's biological son, Ricky adopted him.

died of leukemia on June 3, 2001. During the summer months immediately following Jennifer's death, Connie and Randy Johnson helped Ricky care for the children. Connie is Jennifer's mother and the children's grandmother; Randy is Connie's husband and the children's step-grandfather. During the first few months, Connie and Randy were the children's primary caregivers. This arrangement was necessitated by Ricky's work schedule, especially shortly after Jennifer's death. Initially, Ricky and the Johnsons worked cooperatively on the children's behalf. On most nights, Ricky joined the Johnsons and his children for dinner at the Johnsons' home.

Once the school year began, however, Ricky attempted to reassert himself as the children's primary caregiver—especially for the two older boys. B.G.D. and A.J.D. began spending most nights at home with Ricky. Tension between Ricky and the Johnsons increased during this time. The Johnsons perceived Ricky as emotionally aloof and a negative influence on B.G.D. in particular; Ricky believed that Connie was assuming the role of mother instead of grandmother, directly undermining his influence and authority over the children.[2] Later, Ricky wanted to keep J.B.D. overnight and on weekends, but the Johnsons preferred a more gradual transition.

On May 6, 2003, Connie and Randy filed an original suit affecting the parent-child relationship (SAPCR) seeking custody of the children and requesting that they be appointed sole managing conservators. The Johnsons alleged that Ricky endangered the children and significantly impaired their physical health and emotional development, and they obtained an ex parte temporary restraining order pre-venting Ricky from obtaining possession of the children. After a hearing, the trial court dissolved the temporary restraining order and returned the children to their father's conservatorship. The trial court noted in its May 22, 2003 letter ruling:

> The evidence at the temporary orders hearing was not "satisfactory proof" that the father's home raises a serious question concerning the children's physical health and welfare.

> The main concern of the Johnsons focused on Ricky Derzapf's "neglect" of the children, based on his allowing the children to spend so much time with their grandparents, and the services provided by Connie Johnson in taking the children to doctor and dentist visits, picking them up from school when sick, etc. I do not see this arrangement as neglectful in any way. It appears that this was a mutually agreed upon arrangement following the death of the children's mother which has been a benefit to everyone involved—the children, the father and the grandparents. There was no testimony that the Johnsons ever objected to providing these services, or that they asked Mr. Derzapf to take on more of the responsibilities. If they had done so, I believe he would have stepped up to the plate.

The trial court held that the Johnsons, as grandparents, "lack[ed] standing to be appointed as Sole Managing Conservators or Joint Managing Conservators of the children under section 102.004(a)(1) of the Texas Family Code" because there was no evidence that Ricky's care of the children created "serious question[s] concerning [their] physical health or welfare" as Family Code section 102.004(a) required.[3] The

---

**2.** As an example, he cites a letter Connie wrote to B.G.D., noting that once B.G.D. turned seventeen, he could "move out of [his] dad's house [and] never go back...."

**3.** Section 102.004(a) was amended, effective September 1, 2005. The version of the statute in effect when the trial court issued its June 4, 2003 order provided, in relevant part:

trial court dismissed the case without prejudice on June 4, 2003.

After the Johnsons filed the SAPCR, Ricky discontinued their access to the children. According to Ricky, over the next twelve to eighteen months the children began to heal from their depression spurred by their mother's death and the ongoing tension between the Johnsons and him. Ricky took the children to counseling, and they have since been released from the counselor's care because of their progress in coping with their depression, as evidenced by their social and academic success in school and by the fact that B.G.D. and A.J.D. are no longer on antidepressant medications.

Connie and Randy filed a petition for grandparent access on March 10, 2004. The trial court appointed Dr. Mark R. Otis, a psychologist, to evaluate Connie, Randy, the Johnsons' sons,[4] Ricky, and the children and to advise the court whether the Johnsons should have access. On October 14, 2005, the trial court held an evidentiary hearing. Dr. Otis testified, and his report was admitted into evidence. The twenty-four page report, prepared after interviewing all parties, concluded:

> It is my opinion that the children will benefit from renewed contact with their mother's family. While the children have certainly benefitted from being pulled away from Connie's untoward communications, the children's loss of relatedness to the entire Johnson family has added to the children's feeling of loss following their mother's death. I have specific concern, however, that Connie is at risk to dominate contact

with the children and to project her experiences inappropriately on the children, thereby undermining both Ricky's position and the ability of other Johnson family members to relate fully to the children. Additionally, Ricky and the Johnsons have highly polarized views of the situation and one another. Their conflict is now highly intractable and will not yield easily to change.

Dr. Otis recommended family therapy for Connie, Randy, and their sons, in which the primary focus would involve family members "learning how to monitor, coach, restrain and help Connie: 1. block inappropriate communications or questions to the children about their father or faith matters, 2. respect interpersonal and family boundaries, and 3. be mindful to others' relational needs rather than being so focused on her own." He recommended that the children have visitation with *only* Randy and the Uncles, until such time as Connie's therapist determined that she was ready to join family outings. Alternatively, he recommended that the Johnsons and the Uncles have access to the children for one full day every two months.

At the hearing, Dr. Otis testified that the children had formed attachments to the Johnsons, and it would "not be healthy to cut them off." He testified that B.G.D. and A.J.D. had a "lingering sadness" about their lack of contact with the grandparents, but that it was "not manifested as depression or behavioral problems or acting out" and that it did not "rise to a level of significant emotional impairment."

On February 1, 2006, the trial court signed temporary orders granting the

---

[A] grandparent may file an original suit requesting managing conservatorship if there is satisfactory proof to the court that: (1) the order requested is necessary because the child's present environment presents a serious question concerning the child's physical health or welfare

Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 157, *amended by* Act of May 27, 2005, 74th Leg., R.S., ch. 489, 2005 Tex. Gen. Laws 1345.

4. The Johnsons' three sons (collectively, the "Uncles") were among those interviewed by Dr. Otis.

Johnsons and the Uncles visitation [5] on Thanksgiving Day and the first Saturday of each month.[6] On July 7, 2006, the trial court issued amended temporary orders stating that: (1) Connie and Randy had standing; (2) denying access would significantly impair the children's physical health or emotional well-being; (3) Connie and Randy, but not the Uncles, were granted visitation with the children during part of Thanksgiving day and on the first Saturday of each month and could attend the children's extracurricular activities; and (4) the Uncles could pick up and return the children during these visits.

Ricky sought mandamus relief. After granting his motion for temporary relief and staying the trial court's order, the court of appeals denied the mandamus petition in a per curiam memorandum opinion. 2006 WL 2076529. For the reasons expressed below, we conditionally grant mandamus relief and direct the trial court to vacate its amended temporary orders of July 7, 2006.

## II

■ Initially, we must determine whether Randy Johnson, the children's step-grandfather, has standing to pursue grandparent access.[7] "Possession of or access to a child by a grandparent is governed by the standards established by Chapter 153." TEX. FAM.CODE § 102.004(c). Ricky argues that chapter 153 applies only to "biological or adoptive grandparents," and because Randy is neither, he lacks standing to seek access. TEX. FAM.CODE § 153.432(a). The Johnsons disagree, citing three reasons Randy should have standing to bring a suit for grandparent access. First, they argue that although subsection 153.432(a) states that a "biological or adoptive grandparent" may file a suit for possession or access to their grandchildren, subsection 153.432(b) refers only to "a grandparent" as opposed to a "biological or adoptive grandparent," [8] and thus even non-biological or adoptive grandparents may seek access under subsection (b). *Compare id.* § 153.432(a), *with id.* § 153.432(b).

■ We disagree. Subsection (b) merely clarifies the circumstances in which a grandparent may request the possession or access described in subsection (a); it does not redefine who may seek access. "[C]ourts should not give an undefined

---

5. The Uncles were not parties to the suit.

6. On June 12, 2006, the trial court heard Ricky's motion to dismiss. At the hearing, Ricky's lawyer stated that Ricky would be inclined to grant some type of access to the children, but not court-ordered access and only access that could be directed and supervised by Ricky "under his rights as a parent to oversee the interaction with the grandparent." The trial court has not ruled on the motion.

7. We note that standing was among the factors considered by the United States Supreme Court in concluding that Washington's grandparent access statute was unconstitutional. *See Troxel v. Granville*, 530 U.S. 57, 67, 72, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plu-rality opinion)(noting the "breathtakingly broad" scope of the Washington statute at issue, which permitted "any person" to sue for access) (citation omitted).

8. Family Code section 153.432 provides:

(a) *A biological or adoptive grandparent* may request possession of or access to a grandchild by filing:
(1) an original suit; or
(2) a suit for modification as provided by Chapter 156.
(b) A grandparent may request possession of or access to a grandchild in a suit filed for the sole purpose of requesting the relief, without regard to whether the appointment of a managing conservator is an issue in the suit.

TEX. FAM.CODE § 153.432 (emphasis added).

statutory term a meaning out of harmony or inconsistent with other provisions, although it might be susceptible of such a construction if standing alone." *Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex.2002). Because Randy is not a biological or an adoptive grandparent, he lacks standing to seek grandparent access under section 153.432 of the Family Code.

Second, the trial court concluded that Randy had "general" standing to file a suit for access to the grandchildren under section 102.003(a)(9) of the Family Code.[9] Randy argues that his original suit was filed on May 6, 2003, and it is undisputed that he and his wife had care, control, and possession for at least six months ending not more than ninety days before they filed suit. That suit, however, was dismissed, and Ricky argues that because the Johnsons did not file another petition until March 2004, that date should govern for purposes of determining section 102.003(a)(9) standing.

Regardless of whether Randy satisfied section 102.003(a)(9)'s general standing requirements for filing a SAPCR—an issue we do not reach—the trial court awarded access based on the standards set forth in section 153.433, the grandparent access statute. As set forth above, Randy does not meet the more specific standing requirements to pursue a claim under that section. Concluding that Randy had standing under section 102.003(a)(9) when access was granted based on chapter 153 would permit an end run around the re-

quirements of section 153.432(a), a result the Legislature cannot have intended.[10] *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 901 (Tex.2000) (noting "the traditional statutory construction principle that the more specific statute controls over the more general").

Finally, the Johnsons argue that Randy has a justiciable interest sufficient to confer standing, based on *In re C.T.H.*, 112 S.W.3d 262, 265–66 (Tex.App.-Beaumont 2003, no pet.). That case, however, did not involve the grandparent access statute but was instead a child custody dispute between the child's parents, in which the father sought to modify a prior custody order. The maternal grandparents intervened, alleging that they had had care, control, and possession of the child for at least six months, and requesting that their daughter (the children's mother) retain her role as "primary" joint managing conservator, and alternatively, that they be named "primary" joint managing conservators. *C.T.H.*, 112 S.W.3d at 265. Based on the pleadings and the evidence, the trial court concluded that the grandparents had a justiciable interest in the controversy.

We face a different situation here. The grandparent access statute explicitly sets forth who may sue for access, and Randy did not meet those criteria. We cannot conclude that he has a justiciable interest in the controversy sufficient to override the statutory text permitting only biological or adoptive grandparents to seek ac-

9. Family Code section 102.003(a)(9) states, "An original suit may be filed at any time by a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition." TEX. FAM.CODE § 102.003(a)(9).

10. This is not to say that grandparents may not seek *conservatorship* by satisfying chapter

102's standing requirements. *See, e.g.,* TEX FAM.CODE § 102.003(a)(9) (authorizing suits by any "person, other than a foster parent" who has had actual care, control, and possession of the child for a designated period); *id.* § 102.004(a) (authorizing a grandparent to file an original suit seeking managing conservatorship under certain circumstances). *Possession* and *access*, however, are governed by chapter 153. *Id.* § 102.004(c).

cess pursuant to the standards set forth in section 153.433. We conclude that the trial court abused its discretion in concluding that Randy had standing and in ordering that he have access to the children.

## III

■ We now turn to whether the trial court abused its discretion in awarding Connie access pursuant to section 153.433. The Legislature recently amended the grandparent access statute, effective September 1, 2005, changing the requisite standard for a grandparent to obtain court-ordered access to a grandchild. Previously, the statute permitted grandparent access if it was in the "best interest of the child." Act of Apr. 6, 1995, 74th Leg., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 157, *amended by* Act of May 27, 2005, 79th Leg., R.S., ch. 484, 2005 Tex. Gen. Laws 1345. As amended, section 153.433 now echoes the United States Supreme Court's plurality opinion in *Troxel,* 530 U.S. at 68, 120 S.Ct. 2054, that a trial court must presume that a fit parent acts in his or her child's best interest. TEX. FAM.CODE § 153.433. As we recently recognized, "so long as a parent adequately cares for his or her children *(i.e.,* is fit), there will normally be no reason for the State to inject itself into the private realm of the family." *In re Mays–Hooper,* 189 S.W.3d 777, 778 (Tex.2006) (quoting *Troxel,* 530 U.S. at 68, 120 S.Ct. 2054); *see also Troxel,* 530 U.S. at 72–73, 120 S.Ct. 2054 (noting that the constitution "does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better decision' could be made").

■ Section 153.433(2) requires that a grandparent seeking court-ordered access overcome the presumption that a parent acts in his or her child's best interest by proving by a preponderance of the evidence that "denial ... of access to the child would significantly impair the child's physical health or emotional well-being." TEX. FAM.CODE § 153.433(2). A trial court abuses its discretion when it grants access to a grandparent who has not met this standard because " '[a] trial court has no 'discretion' in determining what the law is or applying the law to the facts[,]' even when the law is unsettled." *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 135 (Tex.2004)(first alteration in original) (footnotes omitted).

■ To succeed on her claim then, Connie must overcome the statutory presumption that denying the children access to her in particular—not Connie and Randy jointly or the Johnson family as a whole—would significantly impair the children's physical health or emotional well-being. TEX. FAM.CODE § 153.432(2). Connie argues that unlike *Mays–Hooper,* there is sufficient evidence to prove that denying her access to her grandchildren would cause the grandchildren's emotional well-being to suffer, and she urges us to consider Dr. Otis's testimony in support of her argument.

While it is true that Dr. Otis believed the children would benefit from renewed contact with the Johnson family, he did not testify that denying Connie access to her grandchildren would significantly impair the children's physical or emotional health. Dr. Otis's testimony pertained either to *both* Connie and Randy or to the Johnson family as a whole, but his recommendations do not support renewed contact with Connie alone. To the contrary, Dr. Otis noted that Ricky had a reasonable interest in preserving "the children's hard-won feelings of peace and security" regained after contact with Connie ceased.

Dr. Otis's report concluded that the children should first have renewed contact with Randy, then with the Uncles and

extended family, and only later with Connie. Dr. Otis testified that his recommendation "was based on the strength that I perceived that the grandfather, Randy has." In fact, Dr. Otis testified that he could not recommend visitation with Connie, absent supervision, as Connie's problems controlling her impulses could be "very influential" and detrimental to the children.

And while Dr. Otis testified that it may be harmful for Ricky to cut off the Johnsons' access to B.G.D. in particular and that it was in the children's best interest that they have some contact with their grandparents, his testimony does not support awarding Connie access over Ricky's objection. According to Dr. Otis, "[t]he manner in which she resisted the children transitioning to [Ricky's] full-time care interfered with the children's emotional and behavioral adjustment." He also concluded that Connie actively attempted to alienate B.G.D. from his father and that her behavior was "very damaging" to the parent-child relationship. Moreover, while Dr. Otis noted the children's "sadness" at being unable to see their grandparents, he admitted that these feelings did not rise to the level of a significant emotional impairment.

The Legislature set a high threshold for a grandparent to overcome the presumption that a fit parent acts in his children's best interest: the grandparent must prove that denial of access would *"significantly impair"* the children's physical health or emotional well-being. TEX. FAM.CODE § 153.433(2) (emphasis added). There has been no such showing here. A court may not lightly interfere with child-rearing decisions made by Ricky—a fit parent by all accounts—simply because a "better decision" may have been made. *Troxel,* 530 U.S. at 73, 120 S.Ct. 2054.

## IV

■ Finally, we must consider whether Ricky has an adequate appellate remedy. Determining whether a party has an adequate remedy by appeal requires a "careful balanc[ing] of jurisprudential considerations" that "implicate both public and private interests.... When the benefits [of mandamus review] outweigh the detriments, appellate courts must consider whether the appellate remedy is adequate." *In re Prudential,* 148 S.W.3d at 136. We have noted:

> Mandamus review of significant rulings in exceptional cases may be essential to preserve important substantive and procedural rights from impairment or loss, allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments, and spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.

*Id.*

■ We have previously granted mandamus relief to require a trial court to vacate its temporary orders granting grandparent access. *In re Mays–Hooper,* 189 S.W.3d at 778. A grandparent's rights are generally subordinate to a parent's. *See* TEX. FAM.CODE § 153.433(2); *see also Troxel,* 530 U.S. at 64–65, 120 S.Ct. 2054 (plurality opinion) (discussing how statutory rights extended to grandparents and other relatives can create a substantial burden on a parent's traditional role in a child's upbringing). As the *Troxel* plurality stated, " '[i]t is cardinal ... that the custody, care and nurture of the child reside first in the parents.' " *Troxel,* 530 U.S. at 65, 120 S.Ct. 2054 (plurality opinion) (quoting *Prince v. Massachusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944)). *Troxel* also recognized that "the interest of parents in the care, custody,

and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court [of the United States]." *Id.*

The temporary orders here divest a fit parent of possession of his children, in violation of *Troxel's* cardinal principle and without overcoming the statutory presumption that the father is acting in his children's best interest. Such a divestiture is irremediable, and mandamus relief is therefore appropriate. *In re Mays–Hooper,* 189 S.W.3d at 778; *see also Little v. Daggett,* 858 S.W.2d 368, 369 (Tex.1993) (granting mandamus relief to vacate trial court's temporary order granting visitation in suit to establish paternity); *Dancy v. Daggett,* 815 S.W.2d 548, 549 (Tex.1991) (holding that mandamus was an appropriate remedy because "the trial court's issuance of temporary orders [was] not subject to interlocutory appeal"); *accord In re Francis,* 186 S.W.3d 534, 538 (Tex.2006) (stating that a writ of mandamus may be appropriate for reviewing a temporary injunction); *In re Newton,* 146 S.W.3d 648, 651–52 (Tex.2004) (conditionally granting mandamus relief and noting that "a temporary restraining order is generally not appealable").

## V

Without hearing oral argument, we conditionally grant mandamus relief and direct the trial court to vacate its July 7, 2006 amended temporary orders.[11] TEX.R.APP. P. 52.8. We are confident that the trial court will promptly comply; our writ will issue only if it does not.

---

11. Because the trial court abused its discretion in ordering access pursuant to section 153.433(2) of the Family Code, we do not reach Ricky's constitutional concerns nor whether the trial court abused its discretion in granting the Johnsons possession of, as opposed to access to, the children.