IN THE SUPREME COURT OF TEXAS
 
════════════
No. 09-1072
════════════
 
 
In re Richard Scheller, Relator
 
 
════════════════════════════════════════════════════
On Petition for Writ of Mandamus
════════════════════════════════════════════════════
 
 
PER CURIAM
 
            
In this grandparent-access suit, the trial court issued temporary orders that 
included granting a grandfather temporary access to and possession of his 
grandchildren.  However, the trial court abused its discretion in issuing 
the order because the grandfather did not establish by a preponderance of the 
evidence that denial of access to or possession of the grandchildren would 
significantly impair their physical health or emotional well-being.  For 
the reasons expressed below, we conditionally grant mandamus relief and direct 
the trial court to vacate its temporary order for access and possession.
            
Amanda Scheller passed away in September 2007.  
She was survived by her two young daughters and husband, Richard Scheller (“Scheller”).  Both 
before and after Amanda passed away, her daughters 
visited Amanda’s father and step-mother, William Pemberton (“Pemberton”) and 
Judy Pemberton (“Judy”), every four to six weeks in Crockett, Texas.  
During the year after Amanda’s death, Scheller relied 
on the Pembertons for assistance taking care of his 
two daughters.  The girls currently live in Austin with Scheller and his new wife, Sylvia.   
            
The Schellers’ relationship with the Pembertons began to deteriorate in December 2008.  
Scheller alleges the conflict began when he took the 
children to visit the Pembertons in Crockett on 
Christmas Day, rather than Christmas Eve.  The Pembertons blame the conflict, in part, on a decreased 
frequency of visits, which they attribute to Scheller’s relationship with Sylvia.  But Scheller claims the decreased visits were a result, in part, 
from the Pembertons admitted refusal to follow set 
conditions he laid out for his children’s visits, such as avoiding certain 
topics of conversation and adhering to a particular bedtime.  Conflict over 
the time and manner of the Pembertons’ visits with the 
girls continued throughout 2009.  Verbal confrontations about the girls 
arose on the telephone, in public, and at the Schellers’ home in Austin.  
            
Pemberton filed suit for grandparent access in August 2009.  See 
Tex. Fam. Code § 153.432 (providing for suits by grandparents 
for possession or access to grandchildren).  He 
petitioned for temporary access to the girls and for the court to appoint an 
expert to evaluate whether denying Pemberton access to the girls would 
significantly affect their physical health or emotional well-being.  The 
trial court rendered temporary orders awarding Pemberton the following access 
rights:  (1) weekly telephone or webcam access to the girls for up to ten 
minutes, (2) possession and access one weekend of every even-numbered month, (3) 
possession and access from December 28th through December 30th, and (4) 
possession and access for either the second week of July or the week during 
which a particular Vacation Bible School is held.  The orders contain 
general conditions and restrictions that the Pembertons must follow while the children are with 
them.  The court also appointed an expert to serve both as the children’s 
guardian ad litem and as a psychological expert to 
evaluate the relationship between the children and the parties in conflict and 
make recommendations regarding whether denying Pemberton access to his 
granddaughters would significantly impair their physical health or emotional 
well-being.
            
Scheller sought mandamus relief in the court of 
appeals.  The court granted temporary relief and stayed the trial court’s 
temporary order, but subsequently lifted the stay and denied mandamus 
relief.  Scheller now seeks mandamus relief from 
this Court.  He argues that the temporary orders for access to and 
possession of the children and appointment of an expert violated his fundamental 
liberty interest as a parent to have control and autonomy in making 
child-rearing decisions.  Scheller requests that 
we reverse the trial court’s order for temporary access and render judgment 
denying Pemberton’s petition for access and appointment of an expert.  We 
address each contention. 
            
Trial courts have considerable discretion in making temporary orders for a 
child’s safety and welfare in suits affecting the parent-child 
relationship.  See Tex. 
Fam. Code § 
105.001.  However, a trial court cannot “infringe on 
the fundamental right of parents to make child rearing decisions simply 
because [it] believes a better decision could be made.”  Troxel 
v. Granville, 530 U.S. 57, 72–73 (2000) (plurality op.) (internal quotations omitted); see also In re Chambless, 257 S.W.3d 698, 700 (Tex. 2008) (per curiam) (“Parents enjoy a fundamental right to make 
decisions concerning the care, custody, and control of their children.” (quotation omitted)).  We have held that “so long as a 
parent adequately cares for his or her children (i.e., is fit), there 
will normally be no reason for the State to inject itself into the private realm 
of the family.”  In re Derzapf, 219 S.W.3d 
327, 333 (Tex. 2007) (per curiam) (quoting In re 
Mays-Hooper, 189 S.W.3d 777, 778 (Tex. 2006) (per curiam) (quoting Troxel, 
530 U.S. at 68)). 
            
Scheller first argues that the trial court improperly 
issued the temporary orders for access to and possession of the children.  
A trial court abuses its discretion if it grants temporary access to 
grandchildren when a grandparent does not “overcome the presumption that a 
parent acts in his or her child’s best interest by proving that ‘denial . . . of access to the child would 
significantly impair the child’s physical health or emotional well-being.’” 
 Derzapf, 219 S.W.3d at 333 (quoting Tex. Fam. Code § 153.433(2) (current version at Tex. 
Fam. Code § 153.433(a)(2))).  
            
We have granted conditional mandamus relief in similar cases when a grandparent 
does not overcome his “high threshold” burden.  Derzapf, 219 S.W.3d at 335; 
Mays-Hooper, 189 S.W.3d at 778.  In Derzapf, we held that the grandchildren’s “lingering 
sadness” from lack of contact with the grandparents did not sufficiently 
demonstrate significant harm to the children because the court-appointed 
psychologist testified that the sadness did not “manifest[] as depression or 
behavioral problems or acting out” so as to “rise to a level of significant 
emotional impairment.”  219 S.W.3d at 330, 
332–33.  And in Mays-Hooper, we held the trial court 
erred because it “did not indicate any reason why” it should interfere with the 
parent-child relationship, and the mother “articulated several reasons for not 
wanting to turn her son over to her mother-in-law[,]” 
including “differences about church attendance, what to say about [the father’s] 
death, and alleged inattention by her mother-in-law.”  189 S.W.3d at 778. 
            
The United States Supreme Court addressed the issue of grandparent access in 
Troxel v. Granville, 530 U.S. 57 (2000) 
(plurality op.).  The Court held that a trial court’s order for grandparent 
access unconstitutionally infringed on the parent’s fundamental liberty interest 
where there was no evidence that the parent was unfit, that the children’s 
health and well-being would suffer, or that the parent intended to exclude 
grandparent access entirely.  Id. at 68–71.  Accordingly, the 
Court affirmed the Washington Supreme Court’s holding that “‘[p]arents have a right to limit visitation of their children 
with third persons,’ and between parents and judges, ‘the parents should be the 
ones to choose whether to expose their children to certain people or ideas.’” 
 Id. at 63 (quoting In re Custody of Smith, 969 P.2d 21, 31 
(Wash. 1998)). 
            
Similar to Derzapf and Mays-Hooper, the 
trial court abused its discretion in this case because Pemberton did not satisfy 
his burden to be granted access rights.  Pemberton argues that he met the 
statutory burden to prove that his granddaughters’ mental and physical health 
would suffer if he did not have access to them.  He presented evidence 
about behavior exhibited by the girls and circumstances influencing their mental 
and physical health including:  (1) the girls displaying anger; (2) one of 
the girls experiencing instances of isolated bed wetting and nightmares; (3) 
witnesses who have seen Pemberton with the children testifying that, from their 
experiences, denying Pemberton access to his granddaughters would impair the 
children’s physical or emotional development; and (4) the significant impact of 
loss of maternal family members on the girls, leaving Pemberton the only 
remaining maternal familial connection. 
            
However, that evidence is not enough to satisfy Pemberton’s hefty statutory 
burden, and we hold that the trial court abused its discretion in issuing a 
temporary order for access to and possession of the children.  Like the 
children in Derzapf, there is nothing in 
the record here to indicate anything more substantial than the children’s 
understandable sadness resulting from losing a family member and, according to 
the Pembertons, missing their grandparents.  
219 S.W.3d at 330.  In fact, the record shows that 
Scheller has taken responsible, precautionary measures 
to ensure that his daughters are able to cope with their grief, such as sending 
his older daughter to counseling and grief groups.  As in Troxel, Scheller appears to 
be willing to allow Pemberton to see the girls as long as he comes to Austin and 
does not bring Judy.[1]  Scheller 
concedes he has not spoken with Pemberton since this litigation began, but 
explains that his attorney advised him against it.
            
We hold that the trial court abused its discretion in granting a temporary order 
for access to and possession of the Scheller girls 
because Pemberton did not meet the hefty statutory burden required to prove that 
he is entitled to grandparent access rights.  If evidence is presented as 
the litigation develops that overcomes the hefty presumption, the trial court 
may reconsider the issue.  However, there was insufficient evidence at this 
stage of the litigation for the trial court to issue the temporary order 
granting Pemberton access to and possession of his granddaughters. 
            
Next, Scheller challenges the trial court’s order 
appointing an expert to serve both as guardian ad litem to the children and as an expert psychologist to 
examine the parties and children to make recommendations to the court.  He 
argues that the trial court’s appointment violates his constitutional right to 
make child rearing decisions and is effectively more invasive than the temporary 
access orders because it requires Scheller to follow 
recommendations made by the expert.
            
Despite considerable discretion vested in courts to issue temporary orders “for 
the safety and welfare of the child,” a court cannot act to infringe on a 
party’s constitutional rights.  Tex. Fam. Code § 105.001, see 
also Grigsby v. Coker, 904 S.W.2d 619, 621 (Tex. 1995) (per curiam) (holding that a trial court abused its discretion by 
entering a temporary gag order in a child custody modification proceeding that 
violated the parties’ constitutional rights to free speech and due 
process).  Parental control and autonomy is a “fundamental liberty 
interest.”  Derzapf, 219 S.W.3d at 335 
(quoting Troxel, 530 U.S. at 65).  And as 
we previously explained, there is no reason to inject the State into the family 
realm when a parent adequately cares for his children.  Id. at 333 (citations and quotations omitted).  
However, the trial court’s appointment of an evaluative expert does not infringe 
on Scheller’s rights because such an appointment is 
allowed by law; the order entered by the Court does not interfere with the 
parental relationship, but rather seeks to determine the best interests of the 
children; and no conflict exists between appointing the evaluating psychologist 
as guardian ad litem.
            
The Family Code specifically provides for this type of appointment.  A suit 
for access to a child is a suit affecting the parent-child relationship (SAPCR) 
in which the principal consideration is the child’s best interest.  
See Tex. Fam. 
Code § 101.032(a) (defining a SAPCR); 
id. § 153.002 (explaining that “[t]he best interest 
of the child shall always be the primary consideration of the court in 
determining the issues of . . . possession of and access to the 
child”).  In SAPCRs, a trial court may appoint a psychologist or 
psychiatrist to conduct a mental examination of the parties and children subject 
to the suit.  Tex. R. Civ. P. 
204.4(a).  A trial court additionally has discretion 
to appoint a guardian ad litem in a suit for access to 
a child if it “finds that the appointment is necessary to ensure the 
determination of the best interests of the child . . . .”  Tex. Fam. Code § 107.021(a)(3), (b)(2).  Psychologists are one class of 
professionals qualified under the Family Code to serve as a guardians ad litem.  See 
id. § 107.001(5)(B), (5)(C).  In using 
these finite resources at the trial court’s disposal to determine the best 
interests of the children, the trial court did not abuse its discretion.
            
Also, nothing on the face of the order indicates that the trial court erred in 
appointing the same person to serve as expert psychologist and guardian ad litem.  The role of the psychologist in evaluating the 
children and parties is consistent with the role of a guardian ad litem because the psychologist gives the court 
recommendations about the children’s best interests.  See Tex. Fam. Code § 107.002(a), (b), 
(e) (detailing a guardian ad litem’s duties, which 
include reviewing relevant records, interviewing the parties and children 
subject to the suit to determine the child’s best interest, reporting to the 
court, testifying during hearings, and performing any other relevant tasks the 
court orders).  
            
Scheller argues that this specific order violates his 
constitutional rights.  Generally, a trial court would commit error by 
requiring a party to adhere to expert recommendations in violation of a party’s 
constitutional rights.  However, in this case, the trial court did not 
abuse its discretion or commit an error of law by appointing an expert to 
evaluate the parties and children, represent the children’s best interests, and 
make recommendations to the court as to whether depriving Pemberton access would 
significantly harm the girls’ emotional well-being or physical health.  
Scheller argues this order violates his constitutional 
rights because it orders his children to participate in counseling.  Trial 
courts may order parties to participate in counseling with a mental health 
professional if they have a “history of conflict in resolving an issue of . . . access to the child.”  
Tex. Fam. Code 
§ 153.010(a)(1).  But it is clear from 
the order that the trial court did not intend to require counseling, but instead 
intended to have an expert psychologist assist the court in making factual 
determinations regarding whether depriving Pemberton of access to and possession 
of his grandchildren would significantly impair their physical health or 
emotional well-being.
            
Scheller’s argument is unpersuasive given the content 
of the temporary order appointing the expert, whose dual role as guardian ad 
litem and evaluative psychologist facilitates the 
court’s factual inquiry into the children’s best interest and physical and 
emotional welfare.  The trial court appointed the expert “to evaluate the 
circumstances surrounding the relationship between the Petitioner, Respondent, 
and the children, and to make recommendations to the court regarding whether 
denial of possession and access to the children by Petitioner would 
significantly impair their physical health or emotional well-being.”  The 
parties are only ordered to “follow the recommendations of [the expert] and 
otherwise cooperate in her evaluation of the circumstances surrounding the basis 
of th[e] suit, including but not limited to, making 
the children available for any interviews, joint sessions, individual sessions, 
or other contact deemed necessary by [the expert] in performance of her 
duties . . . .”  Further, the court will hold a hearing 
if party objects to the recommendations relating to whether an evaluation should 
be performed on a party or child.  Accordingly, the expert’s role as 
demonstrated by the trial court’s order does not interfere with Scheller’s constitutional rights.
            
Scheller is entitled to mandamus relief because the 
trial court abused its discretion in issuing temporary orders for grandparent 
access.  Pemberton did not meet the burden required to divest a a parent of control and autonomy 
in making parenting decisions.  This is irremediable error that warrants 
mandamus relief.  See Derzapf, 219 S.W.3d at 334–35.  However, the trial court did not 
err in appointing an expert to serve as guardian ad litem to the children and as a psychologist to evaluate the 
case and make recommendations to the court regarding the children’s best 
interests.  Accordingly, without hearing oral argument, we conditionally 
grant mandamus relief and direct the trial court to lift the temporary order 
permitting grandparent access.  See Tex. R. App. P. 52.8(c), 59.1.  We are 
confident that the court will comply, and the writ will issue only if it does 
not.
 
OPINION 
DELIVERED: November 5, 2010






[1] 
Step-grandparents do not have standing to seek 
access to their step-grandchildren.  See Derzapf, 219 S.W.3d at 
331–33.