

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-13-00260-CV

**IN THE INTEREST OF K.R.H.**, a Child

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CI-03379
Honorable Antonia Arteaga, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:        Sandee Bryan Marion, Justice
                Rebeca C. Martinez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  March 26, 2014

AFFIRMED

The maternal grandparents of K.R.H. appeal the trial court's judgment denying their petition for possession of or access to K.R.H. Concluding the trial court did not abuse its discretion, we affirm.

Mr. and Mrs. R. initiated this action after their daughter, K.R.H.'s mother, died. Under Texas law, when one parent of a child is deceased, and the other parent has not had his parental rights terminated, a trial court "may order reasonable possession of or access to" the child by her biological grandparent (the parent of the deceased parent) if

> the grandparent requesting possession of or access to the child overcomes the presumption that a parent acts in the best interest of the parent's child by proving by a preponderance of the evidence that denial of possession of or access to the child would significantly impair the child's physical health or emotional well-being[.]

TEX. FAM. CODE ANN. § 153.433(a)(2) (West Supp. 2013). Parents have a fundamental right to make child rearing decisions. *Troxel v. Granville*, 530 U.S. 57, 72–73 (2000) (plurality op.). Therefore, "so long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family." *In re Derzapf*, 219 S.W.3d 327, 333 (Tex. 2007) (orig. proceeding) (per curiam). A fit parent is presumed to act in his child's best interest and is ordinarily entitled to make all decisions about possession of and access to the child, free from compulsion by the State. *See In re Scheller*, 325 S.W.3d 640, 643 (Tex. 2010) (orig. proceeding). A trial court has discretion to grant possession to a grandparent over the objections of a fit parent only if the grandparent meets a "high threshold" and overcomes that presumption. *Derzapf*, 219 S.W.3d at 334. The trial court may not order grandparent access in the absence of proof by a preponderance of the evidence that the child's parent is unfit, the child's health or emotional well-being will be significantly impaired if the court defers to the parent's decisions, or that the parent intends to exclude the grandparent's access completely and such complete denial of access will significantly harm the child. *See In re Mays–Hooper*, 189 S.W.3d 777, 778 (Tex. 2006) (orig. proceeding) (per curiam).

At the trial of this case, Mr. and Mrs. R. testified they were K.R.H.'s primary caretakers for many years. K.R.H. and her mother, appellants' daughter Olivia, lived in their home for the first six months of K.R.H.'s life. When K.R.H. started daycare at age two, appellants usually took her and picked her up, and she often stayed overnight in their home. Although K.R.H.'s parents, Olivia and Jason, visited K.R.H. occasionally and took her with them occasionally, K.R.H. would stay at appellants' home for as much as a week at a time. When K.R.H. was old enough for kindergarten, appellants enrolled her in the school in their neighborhood.

K.R.H. was seven when her mother died in April 2009. The parties testified it was generally agreed it would be best for K.R.H. to stay in appellants' home at that time. However,

the evidence about the reasons why and how much contact Jason had with his daughter thereafter was disputed. Mr. and Mrs. R. testified Jason was unemployed at the time and was not ready to care for K.R.H. They testified Jason would only occasionally come to visit and that sometimes appellants had to call him and ask him to visit K.R.H. According to appellants, this continued for a year and a half, until December 2010.

Jason and his mother testified that the reason Jason was unable to take K.R.H. with him when his wife died was that he worked evening shifts and often did not leave work until 2:00 or 3:00 in the morning. Jason testified that he saw K.R.H. almost every day, but that it made sense to leave her to sleep at her grandparents' house. When Olivia died, Jason and his parents took a pastor to appellants' home to meet with K.R.H. Thereafter, Jason started taking K.R.H. to the Children's Bereavement Center. Eventually, staff at the Center recommended K.R.H. receive individual therapy. Jason began taking K.R.H. to therapy sessions with Ramona Leonards in August 2010.

Appellants testified that in December 2010, when K.R.H. was eight, Jason picked her up for what was to be a week-long visit. He later called appellants and told them he was going to keep K.R.H. with him, that he wanted to be her father and wanted her in his home. Mr. R. testified that at the time he thought that was a good idea. However, Jason started limiting the time appellants could spend with K.R.H. Plans would be made, but then Jason would cancel them. Appellants testified Jason allowed them to see K.R.H., but would not allow her to spend the night at their house and did not want them to visit with her alone.

In 2011, appellants filed this action, asking the court to name them K.R.H.'s joint managing conservators and to name Jason a possessory conservator. Mrs. R. testified they filed the suit because Jason seemed not to be able to keep a job and they did not think he was able to provide for K.R.H. They testified they were concerned that Jason had previously showed no interest in

raising K.R.H. and he was putting too many limits on their access to and contact with K.R.H. They also testified they were worried for K.R.H. because Jason had a bad temper and he got angry and frustrated easily.

The trial court signed temporary orders in May 2011, naming Jason temporary sole managing conservator. The order granted Mr. and Mrs. R. possession of K.R.H. two Saturdays each month and a week during the summer. The trial court further ordered that K.R.H. continue therapy with Ramona Leonards and that Dr. Leonards make a recommendation regarding whether Mr. and Mrs. R.'s visitation should be expanded to weekend possession. Shortly before the December 2012 trial, Mr. and Mrs. R. amended their petition, recognizing that Jason should be K.R.H.'s conservator and seeking only possession and access under section 153.433 of the Family Code.

Mr. and Mrs. R.'s testimony established that they regularly saw K.R.H. and spoke to her on the telephone after the temporary orders were signed. However, Jason tended to monitor the telephone calls. They testified that Jason cancelled four of the Saturday visitations required by the temporary orders and did not allow K.R.H. to stay with them during the summer.[1] Appellants testified that their principal concern is that K.R.H. maintain a close relationship with them and with the rest of her mother's family. Mr. R. testified that K.R.H. would "be heartbroken" if access to her grandparents were discontinued. Her maternal aunt testified that if the court denied access, K.R.H. would grow up resentful and would believe her grandparents did not love her and did not want to see her. She believed K.R.H. would be very confused and would be harmed by losing strong relationships with her extended family.

---

[1] After an enforcement hearing in August 2012, the trial court found Jason had committed four violations of the Saturday possession order, assessed attorney's fees against him, and granted makeup possession periods.

As part of a mediated agreement regarding the temporary orders, the parties agreed to therapy sessions with Dr. Shelley Probber, a licensed psychologist, who was to facilitate communication between the parties. Dr. Probber testified the parties were in "high conflict" about how much access Mr. and Mrs. R. should have. Appellants want regularly scheduled visitation at specified times; whereas, Jason wants it to be more flexible, with him having complete control over when appellants see K.R.H. Dr. Probber testified that Jason never specified how much access he believes appellants should have; he simply wants it to be at his discretion. Dr. Probber testified she halted the sessions in May 2012 after two group meetings because Jason's hostility caused them to be unproductive.

In a letter to counsel, Dr. Probber stated that she was unable to make any recommendations regarding visitation. She testified that based on what the parties told her, she believes K.R.H. has a "significant relationship" with her grandparents. Dr. Probber testified that, speaking generally because she does not know K.R.H., it would seem "vitally important for this child to maintain connections with that side of the family so she doesn't lose half of who she is." She testified that based on her two meetings with the parties, she did not believe Jason would be open to cooperating with appellants and she is concerned that Jason will not allow appellants to see K.R.H. regularly.

However, Dr. Probber acknowledged children have different reactions to things like this. She had never met K.R.H. and testified she has no knowledge of how K.R.H. would react if there were not the kind of access appellants are asking for. She testified that she could not provide any opinion about whether K.R.H. would suffer either emotional or physical significant impairment if she were not to see her grandparents. Finally, she testified that although Jason appears very angry with appellants and has difficulty listening, she has no opinion about his ability to parent.

Jason acknowledged he had been angry with appellants because they wanted to micromanage his parenting and then sued him to get primary custody of K.R.H. However, he also

testified that he is not trying to deny appellants complete access to K.R.H., "not by any stretch of the imagination." Instead, he wants to be able to manage when the visits occur, taking everything into account – the grandparents' schedules, his schedule, and K.R.H.'s volleyball games, church functions, and activities with her friends.

K.R.H.'s therapist, Ramona Leonards, is a licensed professional counselor at Clarity Child Guidance Center. She testified she began seeing K.R.H. in August 2010. Jason took K.R.H. in initially because she was having problems in school, was going to the nurse frequently, and was exhibiting other signs of anxiety. Leonards testified she had over sixty sessions with K.R.H. and that she is now thriving. She actively participates in sports and in peer groups at church and at school and seems well-adjusted.

Leonards testified that one of the topics she and K.R.H. discuss is her visitation with appellants. After the temporary orders were signed, K.R.H. expressed to Leonards that she was not comfortable staying overnight at appellants' house. Leonards recommended to the court in the summer of 2011 that the possession order not be expanded to include overnight stays. She testified that remained her recommendation at the time of trial. Leonards also testified that although K.R.H. wants to see her mother's family, she feels very resentful about the possession order. Leonards explained that the problem is the forced and artificial nature of K.R.H.'s visits with appellants. Under the temporary orders, K.R.H. visits appellants two Saturdays every month for ten hours, and K.R.H. resents being forced to go at specified times, especially when it conflicts with other activities.

Leonards testified that in her opinion K.R.H. wants to and should maintain contact with her maternal relatives and that it would be harmful to K.R.H. if she were permanently denied access to them. However, she also testified that Jason had never expressed any desire or intent to deny K.R.H. access to her mother's family. Leonards testified that in the absence of a court order,

she believes K.R.H. would want to visit appellants with some kind of regularity and that Jason would allow it.

At the conclusion of the testimony, the trial court denied appellants' petition for access and possession. The trial court later signed findings of fact and conclusions of law that included findings that Jason adequately cares for K.R.H. and that Jason believes K.R.H. should have some contact with appellants.

On appeal, Mr. and Mrs. R. argue the trial court erred by denying their request for possession or access and by failing to appoint a guardian ad litem for K.R.H. We review both these decisions for abuse of discretion. *Scheller*, 325 S.W.3d at 645; *Derzapf*, 219 S.W.3d at 333.

Appellants contend that Jason is an unfit parent and that he intends to exclude them completely from K.R.H.'s life. Appellants did not prove either of these contentions by a preponderance of the evidence and the trial court did not abuse its discretion in finding otherwise. Appellants also failed to prove that K.R.H.'s physical or emotional well-being would suffer if the court defers to Jason's decisions about access. In fact, K.R.H.'s therapist, Ramona Leonards, indicated it would be better for K.R.H.'s emotional well-being if visitation with appellants were managed by Jason instead of being imposed by court order. We hold that appellants did not meet the "hefty statutory burden" required to impose court-ordered grandparental access and the trial court therefore did not abuse its discretion by denying the petition. *See Scheller*, 325 S.W.3d 642-44; *Mays-Hooper*, 189 S.W.3d at 778.

In July 2011, appellants filed a motion for appointment of a guardian ad litem to advocate for K.R.H. in the proceedings. The trial court's written order in response to the motion referred to its previous order that K.R.H. continue therapy with Ramona Leonards and that the parties confer with her. The court ordered Leonards and another psychiatrist, Dr. Geoffrey Grimes, to comply with the court's earlier orders and provide reports regarding their evaluations and

recommendations about K.R.H.'s school, expanded visitation with Mr. and Mrs. R., and other matters.  The order concluded that if the therapist and psychologist did not comply with the order, appellants could renew their request for appointment of a guardian ad litem.  Appellants did not provide a record of the hearing where the motion for appointment of a guardian ad litem was heard and did not provide evidence of whether Leonards and Dr. Grimes provided reports as ordered.  The record does not reflect that appellants ever renewed their request for a guardian ad litem.

The Family Code does not require the trial court to appoint a guardian ad litem in a suit for grandparent access.  The trial court has discretion to appoint a guardian ad litem in a suit for access to a child if it "finds that the appointment is necessary to ensure the determination of the best interests of the child . . ."  TEX. FAM. CODE ANN. § 107.021(b)(2) (West 2008); *Scheller*, 325 S.W.3d at 645.  The trial court concluded such an appointment was not necessary in this case and appellants have not pointed to anything in the record that suggests the trial court abused its discretion in so concluding.

We therefore affirm the trial court's judgment.


Luz Elena D. Chapa, Justice