# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-25-01007-CV

### In re J. T. J.

## ORIGINAL PROCEEDING FROM COMAL COUNTY

## M E M O R A N D U M   O P I N I O N

Relator J.T.J. (Mother) has filed a petition for writ of mandamus and motion for emergency stay contending that the trial court abused its discretion by its order denying her plea to the jurisdiction and expressly finding that N.D.J. (Grandmother) and J.R.J., Sr. (Grandfather), the paternal grandparents of her ten-year-old child, have standing in the underlying suit affecting the parent-child relationship. Mother contends that the trial court's order denying her plea should be vacated. We requested a response from real parties in interest, but none was filed.[1] Because Grandparents have not overcome the presumption that Mother acts in the best interest of Child, we will conditionally grant the writ.

Mother and J.R.J., Jr. (Father) were originally named joint managing conservators of their approximately two-year-old Child in a 2018 SAPCR order that gave Mother the exclusive right to designate the Child's primary residence in Hays and Comal

---

[1] Response was requested, rather than ordered, because the filing of this mandamus preceded the January 1, 2026 effective date of amendments to Texas Rule of Appellate Procedure 52. *See* Tex. R. App. P. 52.4, .8(b)(1), 60 Tex. B.J. 930 (Tex. 1997, amended 2025).

Counties.[2]  In 2020, after Mother and Father completed mediation, the trial court signed an agreed order that modified provisions of the SAPCR order but kept Father and Mother as Child's joint managing conservators.  In 2021, the trial court signed a two-year, family violence protective order against Father for the protection of Mother, finding that family violence occurred and was likely to recur, naming Mother sole managing conservator and Father possessory conservator, and limiting Father to supervised possession of Child through Grandmother.

On June 27, 2022, while the protective order against him was still in effect, Father filed a petition to modify the 2020 modification order, requesting the reappointment of Father and Mother as Child's joint managing conservators and award of expanded standard possession to Father.  Mother filed a counterpetition.  Grandmother filed a pro se petition in intervention but omitted any supporting affidavit for her claimed standing in the parents' SAPCR.

On October 10, 2022, Mother filed a combined plea to the jurisdiction, motion to deny relief, and answer to Grandmother's petition in intervention, contending that it should be dismissed because Grandmother lacked standing to intervene under the grandparent-access provisions in Texas Family Code sections 153.432 and 153.433 and because Grandmother failed to file the affidavit required by subsection 153.432(c) in support of her allegation that denial of the requested grandparent access would result in significant impairment of Child's physical health or emotional well-being.  *See* Tex. Fam. Code §§ 153.432, .432(c), .433.

---

[2]  Child's age at the time is an estimate based on hearing testimony because identifying information is redacted from the mandamus record.

Grandmother, now represented by counsel, filed an amended petition in intervention on February 17, 2023, adding Grandfather as an intervenor and attaching nearly identical supporting affidavits from each of them. Grandparents' petition alleged that Father has "actual or court-ordered possession of or access to the child with supervision by the Intervenors[] but such visitation has been denied repeatedly," that Father "may be considered to be incompetent," and that "[d]enial of possession or access by Intervenors to the child would significantly impair the physical health or emotional well-being of the child."[3] Also, Grandparents requested a trial-court hearing "to determine if the Intervenors could be allowed to have the child interview[ed] and evaluated by a Psychologist to determine if there is a significant emotional and/or physical impairment to the child caused by the separation of the child from the grandparents."

Grandparents' affidavits described the time they have spent with Child. They averred that they are a tightly knit family, that they regularly visit Father (their son), and that in the summer of 2022 Father had difficulties with mental-health medication that affected his behavior. Father texted Mother during Grandparents' scheduled July vacation with Child and told Mother not to allow Child to go to Grandparents' home because it was unsafe. Grandparents' visitations immediately stopped. Grandparents recalled, without specifying dates, that "[b]ack when [Father] would work in the oilfield for 2 week on/off shifts, we assumed his visitations with [Child] fully, and we would often take [Child] out to visit his dad at his work." On Father's days off, Father and Child often spent their visitation time with

---

[3] No competency determination for Father appears in the mandamus record. Future hearings on that matter were scheduled, and Father's counsel in this case expressed uncertainty about where her "ethical bounds [we]re in making representations" to the trial court. Father's counsel noted that she had "been contemplating whether [Father] needs a guardian ad litem."

Grandparents at their home. Grandparents were present at almost all of Father and Child's visits. Child is very close to his uncle (Grandparents' youngest son), and they have spent much time together. Child is also very close to his cousin, who is almost the same age. Grandparents homeschooled Child and his cousin during the summer and start of fall of 2021. Grandparents have taken several family vacations and camping trips with Child, attended family reunions with him, and spent several birthdays and holidays with him. Grandparents enrolled Child in a preschool Sunday program in 2020 and in kindergarten Sunday school in 2021 and had Child baptized.

Grandparents' affidavits also described Child's communications with them. They averred that Child understands who they are and how they are related to him, has memorized their phone number, and had been calling them until recently. During their last phone conversation, Child told them that "his mom and her friend were throwing up in her bathroom toilet, and they got some on the seat." When Child was told that he had to get off the phone to eat dinner, he began crying and pleading to speak with Grandparents longer. Child was assured that he could call Grandparents later, but they "have not seen him since."[4] Grandparents stated that they are court-appointed supervisors for Father[5] and that visitation has been refused.[6]

---

[4] The date that Grandparents last saw Child is unspecified in the mandamus record, although arguments at the hearing on the plea to the jurisdiction indicate that there was some communication by phone between Child and Grandmother and between Child and Father.

[5] Grandmother is the only grandparent named in any court order below as supervisor for Father's periods of possession of Child.

[6] The affidavits' references to some people are unclear, given the parties' redacted names and similar initials, but the context of this reference suggests visitations were refused by Mother.

On March 24, 2023, the trial court signed agreed temporary orders in the SAPCR naming Mother temporary sole managing conservator and Father as temporary possessory conservator and limiting Father to supervised possession of Child through "KinderTime c/o Tammy Green or any KinderTime team member." The trial court recognized that the protective order remained effective until December 14, 2023, ordered Father to continue his mental-health treatment and medication, and ordered him to submit to drug testing. The trial court also recognized that it had issued a separate order appointing Dr. Richard Theis to conduct an "Expanded Parenting and Parent-Child Psychological Evaluation." Although Grandparents' intervention petition had been on file for over a month, the trial court's 2023 orders, like the preceding ones, did not reference Grandparents. The mandamus record does not show further court filings or events until the November 19, 2025 hearing on Mother's plea to the jurisdiction, and there is an indication that at some point, the case was placed on the dismissal-for-want-of-prosecution docket.[7]

During the hearing on Mother's plea to the jurisdiction—which challenged only Grandmother's assertion of standing—Grandparents' counsel stated that Mother "never followed up on" her plea, that "Grandmother has been participating with Father," that Father had been "declared incompetent," that Grandmother's affidavit showed substantial contact with Child, and that "it would harm [Child] to be separated, since Grandmother was involved." Father's counsel represented that "[t]his year alone, [Father] had seven stays in a psychiatric hospital," Father had only intermittent contact with his counsel, KinderTime discontinued

---

[7] At the hearing on the plea to the jurisdiction, Mother's counsel stated that she tried to pursue mediation but there had been no response from Father's counsel and the first time Mother's counsel had "gotten anything from [Grandparents' counsel] was when it was on the DWOP docket."

Father's supervised visits likely due to his mental health, Father had two assault "cases" and another for loitering in the last two years, and "there's going to be periods of psychosis or times where he's not able to do anything." Mother argued that those difficulties, which are not described in either of the affidavits, did not themselves give Grandparents a right to possession and access. Mother noted that under the temporary orders, Father still had possession and access, even if he was not exercising it, and that no one disputed that Mother is a fit parent.

The parties disputed the possession and access exercised through Child's phone calls with Father. Grandparents' counsel told the trial court that "from January through July" (presumably 2025), Child was able to talk to Father by phone and Grandmother was there and able to talk but "Mother stopped those." Mother's counsel denied that Mother stopped the calls and stated that when Child called Father, Grandmother would get on the phone. Mother's counsel added that "[t]he [C]hild hasn't asked to be there and they haven't reached out." Grandparents' counsel responded that if Father "was having an episode," Grandmother "is being protective in that she doesn't allow Child to see that happening [and] she will, I believe, engage in the electronic communication. This child will be 10 in January. He is very smart. I think he understands that his dad is not well." Mother's counsel replied, "Your Honor, it's based on the affidavit." The trial court said, "I'm reading the affidavit, line for line, just to make sure." At the end of the hearing, the trial court remarked,

> Based on the affidavit, they have standing. . . . At the time that the affidavit was drafted, and based on their relationship with the child at that time and based on what the child was trying to do and wasn't getting from them, I find that they meet the requirements.

6

Mother's counsel asked the court again whether it believed, "on that affidavit, that they have standing?" The court responded, "Based on the affidavit, at the time it was issued in 2022, and the relationship with the child at that time, I believe it does qualify."

The trial court signed an order on December 17, 2025, denying Mother's plea to the jurisdiction and motion to deny relief. The order expressly found "based on the affidavit at the time of the rendition of such, sufficient facts to substantiate standing under 15[3].432 were initially met." *See* Tex. Fam. Code § 153.432 (allowing grandparents to request court-ordered access to grandchild upon showing that denial of access will significantly impair child's physical health or emotional well-being). Mother seeks mandamus relief from that order.

A writ of mandamus issues if a trial court abuses its discretion and no adequate remedy by appeal exists. *In re C.J.C.*, 603 S.W.3d 804, 811 (Tex. 2020) (orig. proceeding). In determining whether to grant mandamus relief, we defer to the trial court's factual determinations supported by the record. *Id.* But we may grant mandamus relief if the trial court analyzes or applies the law incorrectly. *Id.* The Texas Supreme Court has granted relief to require a trial court to vacate orders erroneously permitting nonparents access to a child over a fit parent's objection. *Id.* (citing *In re Derzapf*, 219 S.W.3d 327, 334-35 (Tex. 2007) (orig. proceeding) (per curiam)). The supreme court concluded such temporary orders "divest a fit parent of possession of his children," and because that divestiture is "irremediable," mandamus relief is appropriate. *Id.* (quoting *In re Derzapf*, 219 S.W.3d at 335).

Section 153.433 of the Family Code specifies when a court may order reasonable possession of or access to a grandchild by a grandparent. Tex. Fam. Code § 153.433. Among other things, the statute requires that

the grandparent requesting possession of or access to the child overcomes the presumption that a parent acts in the best interest of the parent's child by proving by a preponderance of the evidence that denial of possession of or access to the child would *significantly impair* the child's physical health or emotional well-being.

*Id.* § 153.433(a)(2) (emphasis added). The significant-impairment requirement is reiterated in the next subsection of the statute, which addresses the necessary content of a court's order granting a grandparent's possession of or access to a child over a parent's objections. *See id.* § 153.433(b)(2). The order must specifically state that

the grandparent requesting possession of or access to the child has overcome the presumption that a parent acts in the best interest of the parent's child by proving by a preponderance of the evidence that the denial of possession of or access to the child would significantly impair the child's physical health or emotional well-being.

*Id.* Neither of those statutory requirements were met here.

The Legislature set a high threshold for a grandparent to overcome the presumption that a fit parent acts in his children's best interest: the grandparent must prove that denial of access would *significantly* impair the children's physical health or emotional well-being. *In re Derzapf*, 219 S.W.3d at 334. The presumption that a fit parent acts according to the best interest of their child applies when, as here, a court is asked to modify an existing order that names a parent as the child's managing conservator. *In re C.J.C.*, 603 S.W.3d at 808. A trial court may award a grandparent access to a grandchild only if the strict requirements in Family Code section 153.433 are met. Tex. Fam. Code § 153.433. A trial court abuses its discretion if it grants temporary access to a grandchild when a grandparent does not overcome

that statutory presumption. *In re Scheller*, 325 S.W.3d 640, 643 (Tex. 2010) (orig. proceeding) (per curiam).

Affidavits from Grandparents summarized their close relationship with Child but failed to meet the strict requirement that denying Grandparents access to Child would significantly impair his physical health or emotional well-being. *See* Tex. Fam. Code § 153.433(a)(2). Thus, we conclude that Grandparents did not meet their burden of showing that the trial court's interference with Mother's parental rights was warranted to allow their intervention in the SAPCR. The trial court abused its discretion by denying Mother's plea to the jurisdiction despite Grandparents' failure to meet the standard required to divest a fit parent of control and autonomy in making parenting decisions. *See In re C.J.C.*, 603 S.W.3d at 811; *In re Scheller*, 325 S.W.3d at 646. This is an irremediable error that entitles Mother to mandamus relief. *See In re C.J.C.*, 603 S.W.3d at 811; *In re Scheller*, 325 S.W.3d at 646.

Accordingly, Mother's petition for writ of mandamus is conditionally granted. *See* Tex. R. App. P. 52.8(c). The writ will issue only if the trial court fails to vacate its December 17, 2025 order denying Mother's plea to the jurisdiction and finding that Grandparents have standing to intervene. Mother's motion for emergency stay is dismissed as moot. *See id.* R. 52.10(a).

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Theofanis and Crump

Filed: February 11, 2026

9