# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-17-00862-CV

---

**In re Monte Charlene Diggs Coker**

---

### ORIGINAL PROCEEDING FROM BURNET COUNTY

---

## M E M O R A N D U M   O P I N I O N

Relator Monte Charlene Diggs Coker filed a petition for writ of mandamus complaining of the trial court's temporary orders that restrained her from removing her three youngest children from Burnet County or any county contiguous to Burnet County for the purpose of establishing the children's primary residence. Because we conclude that the trial court abused its discretion, we conditionally grant mandamus relief. *See* Tex. R. App. P. 52.8(c).

## Background

In the underlying proceeding, real party in interest William Diggs Jr. filed a petition to modify the parent-child relationship on October 5, 2017, seeking to modify the parties' final decree of divorce that the trial court signed on July 26, 2017. The final divorce decree approved and incorporated the parties' mediated settlement agreement (MSA) that was signed by the parties on January 31, 2017. At the time of the divorce, the parties had fifteen children and six of the children were minors.

The MSA granted Coker the right to determine the primary residence of the three youngest children and Diggs the right to determine the primary residence of the other three minor children. Consistent with the MSA, the final decree granted Coker the exclusive right to designate the primary residence of the three youngest children without regard to geographic location and granted the same right to Diggs as to the other three minor children. At all relevant times, Diggs lived in Burnet County. At the time that the parties entered into the MSA, Coker was living in Amarillo, Texas, but she had moved to Temple, Texas, in a county contiguous to Burnet County, before the trial court signed the final decree. The final decree generally provides for access and possession based on the parties living within 100 miles of each other. *See* Tex. Fam. Code § 153.312 (addressing possession for parents who reside within 100 miles of each other).

In the petition to modify, Diggs sought to enjoin Coker "from removing the children the subject of this suit from Burnet County or any county contiguous thereto for the purpose of establishing the primary residence of the children." Among the relief he requested, he sought temporary orders to prohibit Coker "from removing the children from Burnet County or any county contiguous thereto for the purpose of establishing their primary residence." Diggs filed the petition to modify after receiving notice from Coker around October 1, 2017, that she was moving back to Amarillo with the three youngest children. Coker was served with the petition to modify on October 11, 2017, but by then, she already had signed a lease for a home in Amarillo and moved with the three children from Temple to Amarillo.[1]

---

[1] The parties presented conflicting evidence concerning Coker's knowledge of the substance of Diggs's petition to modify prior to October 11, 2017. According to Diggs, Coker knew the substance of the petition prior to signing the lease and moving with the three youngest children to

2

The trial court held a hearing on October 16, 2017, to consider temporary orders. At the time of the hearing, the three youngest children were in Amarillo staying with Coker's sister, who lived there. The parties and their 15-year-old daughter, who lived with Diggs, testified. Diggs testified that he was seeking a temporary injunction to require Coker to remain in Central Texas primarily so that the three youngest children could be together with their siblings and not "eight hours apart," he could see the children, and the children would not be subject to spending "countless hours" in the car driving back and forth from Amarillo.[2] Concerning the provision in the divorce decree that grants Coker the exclusive right to designate the primary residence of the three youngest children without regard to geographic location, Diggs testified that "[i]t was an emotional mistake" and that he "wished [he had] never signed" the MSA that allowed the children to be apart. He also testified that the children's uninsured medical expenses would increase if they lived in Amarillo because they would be out of his insurance network.

---

Amarillo. Coker, however, testified that she did not know "that [Diggs] was trying to keep [her] from moving" until she was served with a copy of the petition on October 11, 2017.

[2] Diggs testified when asked what was the "primary reason" for seeking temporary orders to prohibit Coker from moving to Amarillo with the three youngest children:

> The primary reason is pretty simple. It's not about legal maneuvering, it's not about filing motions, you know, when you file them, when you don't file them, when you give notice, when you don't give notice. It's about three little bitty kids. . . . It's about three little bitty kids that are not going to want to be in a car moving back and forth from Amarillo, Texas. It doesn't matter if it's twice a month or if it's once a month.
>
> It's about so much more than legal maneuvering. It's about so much more than filing motions. It's about the rest of their life. It's about them wanting to be around their siblings and grow up around their siblings, because the bond between these siblings is so much stronger than even bonds between parents. They just want to be together. That's all they want. They want to be with each other, they want to be together.

Coker testified that she and the three youngest children lived in Amarillo at the time the parties signed the MSA but that she and the three children had moved to Temple by the time that the divorce decree was signed. She further testified that she told Diggs in August 2017 that she was considering moving back to Amarillo with the three children; that her current husband accepted a job in Amarillo at the beginning of October 2017; and that his job would provide health insurance for the three youngest children in Amarillo. She also testified that she needed to work, that she had a job interview in Amarillo a few days after the hearing for a job that would pay well, and that she had family who lived in Amarillo and were available to help her care for the children while she was working. The evidence was that many relatives, including the three youngest children's siblings, lived in Central Texas but that Coker had "a lot of extended family" in Amarillo.

The parties also presented conflicting testimony about the three youngest children's desires concerning moving to Amarillo. Diggs testified that the children "[were] not excited about being so far away" and that one of them was "full of anger" because he could not be with his brothers. The parties' daughter who lived with Diggs testified that the siblings have a "very, very strong" relationship; that she thought it was "important" for the three youngest children "to grow up around an environment where they have [their siblings]"; and that it was "hard" for the siblings to be around Coker's current husband, explaining that "nobody want[ed] to have a relationship with him at all." Coker, however, testified that: (i) the three youngest children "want[ed] to live" in Amarillo; (ii) that the children had cousins with whom they were close in Amarillo, along with aunts and uncles, and were "happy" living in Amarillo; and (iii) that the children were afraid to tell Diggs that they wanted to live in Amarillo.

4

At the conclusion of the hearing, the trial court made its ruling on the record in relevant part:

> I'm going to make a finding that it would be in the children's best interest for them to live within 50 miles of Burnet County, and I'm going to grant the TRO. . . . But, Mrs. Coker, you took some drastic steps, I think, for what—I'm not sure I can even understand your reason. I'm not sure what the attraction in Amarillo is, but I would think, as a parent and a mother, you would want your children to be able to spend as much time as they can together, and that just further separates the family and I can't do that in their best interest. It's just not in me to say that I think it's in their best interest for them to stay in Amarillo away from their father and away from their other siblings. So I'm going to order that they be returned here within 50 miles of this county and not be taken any farther away than that within—let's see, today's Monday. By Friday they need to be back.

On December 18, 2017, the trial court signed temporary orders consistent with its oral ruling at the hearing.[3] The trial court restrained Coker from removing the three youngest children from Burnet County or any county contiguous thereto "for the purpose of establishing the primary residence of the children" until further order of the trial court or from establishing the children's primary residency more than 100 miles from Diggs's residence. In the orders, the trial court found that the temporary injunction was in the children's best interest. The trial court also found that an affidavit with an exhibit that Diggs signed on December 9, 2017, "state[d] facts that show that the actions of Monte Coker will significantly impair the emotional development of the children" and,

---

[3] Prior to the trial court's entry of the temporary orders, Coker filed a previous petition for writ of mandamus concerning the trial court's oral ruling, and this Court denied that petition. *See In re Coker*, No. 03-17-00750-CV, 2017 WL 5559948 (Tex. App.—Austin Nov. 16, 2017, orig. proceeding) (mem. op.).

therefore, that it "[had] authority to hear this matter pursuant to Section 156.006 and 156.102 of the Texas Family Code."

In the affidavit, Diggs averred that Coker was "attempting to shut [him] out from the lives of the three children who primarily reside with her"; that she intends to limit communication between him and the three children; that she "intends to disrupt and destroy the relationship between the three younger children and [him] as their father"; and that the "actions of Monte Coker if allowed to continue will significantly impair the emotional development of the children." He also averred that the children were not attending public school and that they were "not consistently being home schooled" by Coker. He also expressed concern as to the children's sleep schedule, explaining that he had found that one or more of the children had just woken up at noon on several occasions and on other occasions were awake after midnight. He concluded that the "failure of Monte Coker to provide a consistent schedule for the children, and the failure to provide proper schooling indicates that her actions will significantly impair the emotional development of the children." The exhibit attached to the affidavit was of text messages exchanged between the parties in which Coker refers to Diggs as a "horrible father" and a "dead beat."

## Discussion

### Standard of Review

A party seeking mandamus relief must show that the trial court clearly abused its discretion and that the party has no adequate remedy by appeal. *In re Southwestern Bell Tel. Co.*, 226 S.W.3d 400, 403 (Tex. 2007) (orig. proceeding) (citing *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding)); *In re Serio*, No. 03-14-00786-CV,

6

2014 WL 7458735, at *1 (Tex. App.—Austin Dec. 23, 2014, orig. proceeding) (mem. op.). Because

a trial court's temporary orders are not appealable, mandamus is an appropriate vehicle for a

challenge to such an order. *See In re Derzapf*, 219 S.W.3d 327, 334–35 (Tex. 2007) (orig.

proceeding); *In re Serio*, 2014 WL 7458735, at *1.

**Did the trial court abuse its discretion by entering the temporary orders?**

In this original proceeding, Coker contends in two issues that the trial court abused

its discretion by: (i) holding a hearing and entering temporary orders when Diggs did not file the

required affidavit under section 156.102 of the Texas Family Code, *see* Tex. Fam. Code § 156.102,

and (ii) entering temporary orders that had the effect of changing the designation of the person who

had the exclusive right to designate the primary residence of the three youngest children. Because

it is dispositive, we limit our analysis to the second issue.[4]

Relator's second issue is based on section 156.006 of the Texas Family Code, which

addresses temporary orders when a suit for modification is pending. *See id.* § 156.006. Section

156.006(b) limits the trial court's discretion to render temporary orders that have "the effect of

---

[4] We expressly do not decide if section 156.102 of the Texas Family Code applies when a party is seeking to modify the designation of the person with the right to determine a child's primary residence within a year of a divorce decree by means of a request for temporary orders. *See In re Aguirre*, No. 03-06-00403-CV, 2006 Tex. App. LEXIS 11203, at *12 n.4 (Tex. App.—Austin Aug. 25, 2006, orig. proceeding) (mem. op.) (expressly not deciding if section 156.102 applied when party sought to, in effect, modify designation of person with right to determine child's residence within one year of divorce decree by means of temporary orders); *see also* Tex. Fam. Code § 156.102 (addressing modification of exclusive right to determine primary residence of child within one year of order or MSA; requiring party filing suit to attach affidavit that contains, along with supporting facts, specified allegations; and requiring court to deny relief requested and to refuse to schedule hearing for modification under section without compliant affidavit).

7

"creating, or changing the designation, of the person who has the exclusive right to designate the primary residence of the child, or the effect of creating a geographic area, or changing or eliminating the geographic area, within which a conservator must maintain the child's primary residence." *See id.* § 156.006(b).[5] The trial court is prohibited from rendering these types of temporary orders unless it is in the best interest of the child and, relevant here, "the order is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development." *Id.* § 156.006(b)(1).[6]

"Texas courts have recognized that the 'significant impairment' standard in section 156.006(b)(1) is a high one," and that this standard requires "evidence of bad acts that are more grave than violation of a divorce decree or alienation of a child from a parent." *In re Serio*, 2014 WL 7458735, at *2 (citing *In re Payne*, No. 10-11-00402-CV, 2011 Tex. App. LEXIS 9611, at *6 (Tex. App.—Waco Dec. 2, 2011, orig. proceeding) (mem. op.); *In re C.S.*, 264 S.W.3d 864, 874–75 (Tex. App.—Waco 2008, no pet.)); *see In re Charles*, No. 03-17-00731-CV, 2017 Tex. App. LEXIS 11234, at *10–12 (Tex. App.—Austin Dec. 1, 2017, orig. proceeding) (mem. op.) (discussing significant impairment standard under section 156.006(b)); *In re Eddins*, 2017 Tex. App. LEXIS 5140, at *17–19 (Tex. App.—Dallas June 5, 2017, orig.

---

[5] Section 156.006(b) was amended in 2017 to insert the phrases "creating a designation" and "or the effect of creating a geographic area, or changing or eliminating the geographic area, within which a conservator must maintain the child's primary residence." *See* Act of May 11, 2017, 85th Leg., R.S., ch. 91, § 1, 2017 Tex. Gen. Laws 201, 201. Because the modification suit was filed in October 2017, the amendments apply here. *See id.* §§ 2–3 (providing that changes to law applied to suit for modification pending before trial court or filed after September 1, 2017).

[6] Coker has not challenged the trial court's finding that the temporary orders were in the children's best interest. *See* Tex. Fam. Code § 156.006(b) (requiring that temporary order be in best interest of child).

proceeding) (mem. op.) (concluding that evidence presented at hearing was insufficient to establish substantial impairment of children's physical health or emotional development under section 156.006 and that trial court abused its discretion in issuing temporary orders that changed designation of parent with right to designate children's primary residence); *In re Winters*, No. 05-08-01486-CV, 2008 WL 5177835, at *3 (Tex. App.—Dallas Dec. 11, 2008, orig. proceeding) (mem. op.) (concluding that trial court abused discretion in issuing temporary order and conditionally granting mandamus relief "because record [did] not support the trial judge's decision to change relator's right to designate [child]'s primary residence").

Further, specific allegations as to how a child's emotional development will be significantly impaired are statutorily required under section 156.006(b). *See In re Strickland*, 358 S.W.3d 818, 822–23 (Tex. App—Fort Worth 2012, orig. proceeding) (observing that "conditions that could significantly impair the emotional development of one child may not affect another child as strongly" and requiring "specific allegations as to how a child's emotional development will be significantly impaired" under section 156.006(b)); *see also In re Clayborn*, No. 02-12-00299-CV, 2012 Tex. App. LEXIS 7155, at *7–8 (Tex. App.—Fort Worth Aug. 24, 2012, orig. proceeding) (mem. op.) (concluding that father's general allegations that child "was depressed when she had to leave him and that he believe[d] that she need[ed] counseling to deal with the divorce and custody proceedings" did not show that child's present circumstances would significantly impair emotional development).

Under the terms of the MSA and the final divorce decree, Coker was granted the right to designate the primary residence of the three youngest children without regard to geographic

restriction. In conflict with these provisions, the trial court's temporary orders restrained Coker from removing the children from Burnet County or a contiguous county for the purpose of establishing their primary residence or from establishing their primary residence more than 100 miles from Diggs's residence. Thus, the temporary orders had the effect of changing the person who had the exclusive right to designate the primary residence of the three youngest children and of changing the geographic area within which the children's primary residence was required to be maintained. *See* Tex. Fam. Code § 156.006(b); *In re Davila*, 510 S.W.3d 455, 458 (Tex. App.—San Antonio 2013, orig. proceeding) (observing that temporary order that deprives custodial parent of discretion in determining child's primary residence had effect of changing designation of person with exclusive right to designate primary residence); *In re Winter*s, 2008 WL 5177835, at *1–3. The dispositive issue then is whether the evidence before the trial court supports that the temporary orders were necessary because the three youngest children's "present circumstances would significantly impair the [children]'s physical health or emotional development." *See* Tex. Fam. Code § 156.006(b)(1).

In its temporary orders, the trial court found that Diggs's affidavit that was signed on December 9, 2017, stated "facts that show that the actions of Monte Coker will significantly impair the emotional development of the children." But, even if we consider and take as true Diggs's averments in his affidavit that was filed after the October hearing, that evidence does not support the trial court's finding of significant impairment. Diggs's general allegations that Coker's actions, if allowed to continue, would significantly impair the emotional development of the children were not sufficient to satisfy the standard. *See In re Strickland*, 358 S.W.3d at 822–23; *In re Clayborn*, 2012 Tex. App. LEXIS 7155, at *7–8. And his specific allegations that the children's schedule had

10

not been consistent and that Coker was attempting to limit his communications and destroy and disrupt his relationship with the children at best support implied findings that Coker sought to alienate the children from Diggs or that she occasionally did not properly supervise the children, which would not be sufficient to satisfy the standard. *See In re Charles*, 2017 Tex. App. LEXIS 11234, at *11 (concluding that evidence, including evidence of interference with communications, did "not rise to the level of showing 'significant impairment'"); *In re Serio*, 2014 WL 7458735, at *1–2 (explaining that, even if evidence supported findings that mother had attempted to alienate children from father and prevent them from having ongoing relationship with father, such evidence would not satisfy significant-impairment standard and concluding that record did not contain evidence of "serious acts or omissions" to imply finding of significant impairment); *In re Rather*, No. 14-11-00924-CV, 2011 WL 6141677, at *2 (Tex. App.—Houston [14th Dist.] Dec. 8, 2011, orig. proceeding) (mem. op.) (concluding that evidence that father's relationship with son might be adversely affected by mother's move and that child was sometimes not properly supervised was insufficient to show circumstances that significantly impaired child's health or development); *In re Escamilla*, No. 04-02-00258-CV, 2002 WL 1022945, at *2 (Tex. App.—San Antonio May 22, 2002, orig. proceeding) (mem. op.) (concluding that complaints about mother's attention to children's schooling and general appearance amounted to differences in child-rearing methods and preferences and did not support temporary orders changing person with right to designate children's primary residence).

As to the evidence that Diggs presented at the hearing in October 2017, we similarly conclude that it did not support the trial court's temporary orders. Diggs's testimony about the three

youngest children's desire not to move and his concerns about being eight hours apart from them and subjecting them to spending "countless hours" in the car and his daughter's testimony that it was "important" for the children to be near their siblings were not evidence of bad acts by Coker "more grave" than a violation of the divorce decree or alienation of the children from Diggs. *See In re Serio*, 2014 WL 7458735, at *2 (requiring "evidence of bad acts that are more grave than violation of a divorce decree or alienation of a child from a parent" to support "necessary findings that children's emotional development, in their present circumstances, would be significantly impaired").

On this record, we conclude that the trial court was without evidentiary support for its finding of significant impairment and, thus, that it abused its discretion in rendering the temporary orders that restrained Coker from removing the three youngest children from Burnet County or any county contiguous to Burnet County for the purpose of establishing the children's primary residence and restrained her from establishing the three youngest children's primary residence more than 100 miles from Diggs's residence. *See* Tex. Fam. Code § 156.006(b); *In re Serio*, 2014 WL 7458735, at *1–2 (conditionally granting mandamus relief and concluding that issuance of temporary orders which effectively changed person with exclusive right to designate children's primary residence was abuse of discretion, explaining that record did not "contain evidence of relator's serious acts or omissions from which we may imply the necessary findings that the children's emotional development, in their present circumstances, would be significantly impaired").

**Conclusion**

Because we have concluded that the trial court abused its discretion in rendering the temporary orders, we conditionally grant Coker's requested relief and direct the trial court to vacate

its temporary orders of December 18, 2017.  Writ will issue only in the unlikely event that the trial court does not act in accordance with this opinion.

 

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Filed:   January 23, 2018