

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00548-CV

_____

IN RE A.G., Relator

On Appeal from the 231st District Court
Tarrant County, Texas
Trial Court No. 231-594719-16

Before Kerr, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

In this mandamus action, A.G. (Mother)[1] complains of the trial court's denial of her plea to the jurisdiction, which alleged that Y.P. (Grandmother) lacked the required standing to file a suit for possession of and access to J.G. and A.G. Mother argues that the trial court abused its discretion by denying her plea because Grandmother did not meet her burden to show standing under any provision of the Family Code. We conditionally grant Mother's mandamus petition.

## II. BACKGROUND

This case involves a dispute regarding custody of two children after their Father's death. Mother and Father had divorced in 2016. Until 2023, they were joint managing conservators of their two children with Mother having limited possession and access. In September 2023, while Father was still alive, the trial court modified the custody order, granting Mother expanded possession and access. Because evidence was presented that the children had reported abuse by Mother's then-husband, Y.L., the court also entered an injunction against Y.L., prohibiting him from being present during the children's visits with Mother, from contacting the children, from participating in AppClose conversations with them, or from coming within 500 feet of Father at any time.

---

[1]We refer to the children in this case using their initials and to other family members by their relationships to the children. *See* Tex. Fam. Code Ann. § 109.002(d); Tex. R. App. P. 9.8(b)(2).

Father died on October 22, 2023.[2] Within days, Step-Grandfather (Father's stepfather) filed a petition in intervention seeking possession of the children or, alternatively, court-ordered access to them. Step-Grandfather, now joined by his wife, Grandmother, filed an amended motion in intervention the following month. In July 2024, Grandmother filed her live pleading, titled "Fifth Amended Petition in Intervention and/or Motion to Modify in Suit Affecting the Parent–Child Relationship." Step-Grandfather is no longer a party.

Y.L. also filed a petition in intervention in the underlying case. *See In re J.G.*, No. 02-24-00332-CV, 2024 WL 3978074, at *1 (Tex. App.—Fort Worth Aug. 29, 2024, no pet.) (mem. op.). The trial court denied that petition after entering an order nunc pro tunc modifying the September 2023 modification order to replace the injunction against Y.L. with an injunction against Mother, prohibiting her from allowing the children to contact or to be near Y.L. Mother and Y.L. divorced in June 2024.

Grandmother seeks to be named the children's sole managing conservator. In the unsworn declaration attached to her petition, Grandmother alleged that:

- If the children continue to live with Mother, they will still be exposed to Y.L. because he continues to "insert himself in this case and in [the children's] lives by trying to lift the injunction";

- What she saw when the children visited Mother before Father's death made her believe that Mother was not taking proper care of the children; and

---

[2]Mother had possession of the children on the weekend when Father died and has retained possession since his death.

- If the children are not provided proper psychiatric help following Father's death, they may suffer permanent emotional harm.

Mother filed a plea to the jurisdiction challenging Grandmother's standing to intervene. In an evidentiary hearing on the plea to the jurisdiction, Mother, Grandmother, and Step-Grandfather testified. The court orally ruled at the hearing that Grandmother—and Step-Grandfather, who was no longer a party—had standing to intervene but declined to indicate a specific basis for its jurisdiction. In a subsequent written order, the court denied Mother's plea to the jurisdiction without stating a basis for the denial.

Mother filed this petition for writ of mandamus, challenging the trial court's finding that Grandmother has standing to maintain her suit in intervention.[3]

### III. DISCUSSION

Mother's petition for writ of mandamus alleges the trial court abused its discretion by failing to dismiss Grandmother's conservatorship and access claims.

### A. Standard of Review and Applicable Law

We grant the extraordinary relief of mandamus only when the trial court has clearly abused its discretion and the relator lacks an adequate remedy. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 259 (Tex. 2008) (orig. proceeding); *see In re State*,

---

[3]Mother also challenges the trial court's finding that Step-Grandfather has standing though he is no longer a party. Because there is no justiciable controversy between the parties and Step-Grandfather no longer has a legally cognizable interest in the outcome, we decline to address this issue. *See State ex rel. Best v. Harper*, 562 S.W.3d 1, 6 (Tex. 2018) (op. on reh'g).

4

355 S.W.3d 611, 613 (Tex. 2011) (orig. proceeding).  A trial court has no discretion in determining what the law is or in applying the law to the particular facts.  *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding).

Mandamus relief is permissible when a trial court erroneously denies a motion to dismiss a suit affecting the parent–child relationship (SAPCR) for lack of standing. *In re Clay*, No. 02-18-00404-CV, 2019 WL 545722, at *3 (Tex. App.—Fort Worth Feb. 12, 2019, orig. proceeding [mand. denied]) (mem. op.); *In re McDaniel*, 408 S.W.3d 389, 396 (Tex. App.—Houston [1st Dist.] 2011, orig. proceeding).  Thus, we must determine whether the trial court clearly misapplied the law regarding standing in denying Mother's plea to the jurisdiction.  *Clay*, 2019 WL 545722 at *3.

The issue of standing is a question of law that we review de novo.  *In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018).  A party's lack of standing deprives the trial court of subject-matter jurisdiction and renders any court action void.  *In re Russell*, 321 S.W.3d 846, 856 (Tex. App.—Fort Worth 2010, orig. proceeding [mand. denied]).  If a petitioner lacks standing to assert a claim, the trial court must dismiss that claim for lack of jurisdiction.  *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 153 (Tex. 2012); *In re H.L.*, 613 S.W.3d 722, 724 (Tex. App.—Fort Worth 2020, no pet.).

When standing has been conferred by statute, the statute itself serves as the proper framework for a standing analysis.  *See Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex. 1984).  A party seeking relief in a SAPCR must allege and establish standing within the

5

parameters of the language used in the relevant Family Code provisions. *H.L.*, 613 S.W.3d at 724.

An analysis of whether a party has standing begins with the petitioner's live pleadings, and we construe the pleadings in the petitioner's favor. *See Jasek v. Tex. Dep't of Fam. & Protective Servs.*, 348 S.W.3d 523, 527 (Tex. App.—Austin 2011, no pet.). When, as here, the existence of jurisdictional facts is challenged, the trial court must consider evidence submitted by the parties when necessary to resolve the jurisdictional issue. *In re M.P.*, No. 13-21-00013-CV, 2022 WL 1572267, at *3 (Tex. App.—Corpus Christi–Edinburg May 19, 2022, no pet.) (mem. op.) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)). If the facts relevant to jurisdiction are undisputed, the jurisdictional determination is made as a matter of law. *See Tex. Dep't. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).

Sections 102.003, 102.004, and 153.432 of the Family Code confer statutory standing for a nonparent to file a petition in a SAPCR. *See* Tex. Fam. Code Ann. §§ 102.003(a), 102.004, 153.432. Grandmother specifically alleged standing under Sections 102.003(a)(11), 102.003(a)(13), 102.004, and 153.432.[4]

Because the trial court did not specify the grounds for its order finding standing, we consider each ground before it and must affirm the ruling if it can be

---

[4] Grandmother also alleged standing under Section 153.433, which lays out requirements for specificity in an access order. Tex. Fam. Code Ann. § 153.433(b). Because that statute does not confer standing, we need not address the argument that Grandmother had standing under it. *See Clay*, 2019 WL 545722, at *6.

6

upheld on any legal theory that finds support in the evidence. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

### B. Standing Under Section 102.003(a)(11)

A person with whom a child and the child's parent have resided for at least six months, ending not more than ninety days preceding the date of the filing of the petition, has standing to bring suit if the child's parent is deceased at the time of filing. Tex. Fam. Code Ann. § 102.003(a)(11). According to the undisputed testimony in the record, Grandmother did not live with the children and Father for the requisite time. Grandmother testified that she visited the children "almost daily" for sixteen months before Father died but that she maintained her own residence and did not reside with the children or with Father. Because Grandmother did not present any evidence showing she can meet this statutory requirement, she does not have standing under Section 102.003(a)(11). *See Clay*, 2019 WL 545722, at *8–9.

### C. Standing Under Section 102.003(a)(13)

A person who is a relative within the third degree of consanguinity[5] of a child has standing to bring suit if the child's parents are deceased at the time of filing. Tex. Fam. Code Ann. § 102.003(a)(13). Although it is undisputed that Father is deceased, it is also undisputed that Mother is not. Because Grandmother did not show that she meets this statutory requirement, she also does not have standing under this

---

[5]It is undisputed that Grandmother is related to the children in the second degree of consanguinity, as a parent of Father. Tex. Fam. Code Ann. § 101.024(a); Tex. Gov't Code Ann. § 573.023(a).

provision. *See In re M.G.G.*, 673 S.W.3d 363, 368 (Tex. App.—Corpus Christi–Edinburg 2023, no pet.); *In re C.A.R.*, No. 08-01-00469-CV, 2002 WL 31727244, at *2 (Tex. App.—El Paso Dec. 5, 2002, no pet.) (not designated for publication) (holding that Section 102.003(a)(13) does not confer standing if only one parent is deceased).

**D. Standing Under Section 102.004**

Section 102.004(a) confers standing upon a grandparent to request managing conservatorship "if there is satisfactory proof to the court that . . . the order requested is necessary because the child's present circumstances would significantly impair the child's physical health or emotional development." Tex. Fam. Code Ann. § 102.004(a). Similarly, Section 102.004(b) allows a grandparent to intervene with satisfactory proof that appointment of a parent as sole managing conservator would significantly impair the child's physical health or emotional development. Tex. Fam. Code Ann. § 102.004(b).

When seeking conservatorship or access, a nonparent must offer evidence of specific actions or omissions of the parent that would result in physical or emotional harm to the child. *Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990). Evidence that merely raises a surmise or speculation is insufficient without identification of specific acts or omissions. *Mauldin v. Clements*, 428 S.W.3d 247, 263 (Tex. App.—Houston [1st Dist.] 2014, no pet.). To demonstrate standing under either provision in Section 102.004, the petitioner must overcome the statutory presumption in favor of appointment of a parent as the child's managing conservator. Tex. Fam. Code Ann.

8

§ 153.131(a); *In re S.T.*, 508 S.W.3d 482, 492 (Tex. App.—Fort Worth 2015, no pet.). Acts or omissions sufficient to overcome the fit-parent presumption include—but are not limited to—physical abuse; severe neglect; abandonment; drug or alcohol abuse; immoral behavior; parental irresponsibility; a history of mental disorders and suicidal thoughts; frequent moves; bad judgment; child abandonment; and an unstable, disorganized, and chaotic lifestyle that has and will continue to put the child at risk. *See S.T.* at 492. "The material time to consider is the present, and evidence of past conduct may not, by itself, be sufficient to show present unfitness." *Id.* Grandmother makes no sufficient showing here.

To try to show significant impairment, Grandmother alleged in her unsworn statement that denial of her appointment as sole managing conservator or, alternatively, denial of possession and access "would significantly impair the children's physical health and emotional well-being." Grandmother alleges four areas of concern.

Grandmother averred that she worried that if the children are not given "proper psychiatric help," they "may suffer permanent harm to their emotional [well-being]." Grandmother further testified that she requested to attend counseling with the children, but that her request was refused. Mother testified that the children receive the group grief counseling recommended by their counselor and that group counseling does not allow grandparents to attend counseling with the children. She testified that A.G. received one-on-one counseling sessions for five months before

9

transitioning to group counseling when the counselor determined A.G. was ready. Mother stated that Grandmother did not request to attend counseling with the children while A.G. was receiving one-on-one counseling.

Grandmother's declaration also stated that Mother did not consistently exercise her visitation before Father died and that when she did, the children were returned in the "same clothes they were wearing when they left" and "had not showered over the course of the weekend." But Grandmother's testimony clarified that she did not have personal knowledge that Mother did not exercise all her visitation. Her testimony did not further address her allegations regarding the children's bathing. Mother testified that when the children visited her, they stayed at her mother's house, where they had clothes and where they bathed.

Grandmother further averred that Mother prevented the children from having contact with Father's family, which was much of the basis of her allegations of substantial harm. Grandmother testified that she had sent text messages to the children but had not received any answer. Mother testified that she had not cut off contact with Father's family and that at least one member of Grandmother's family had been in contact with J.G. and texted several times. She also testified that she had not blocked any phone numbers, changed the children's phone numbers, or told the children not to contact Grandmother or other members of Father's family. Mother stated that she had offered to allow Grandmother and Step-Grandfather to send written letters to the children but had never received any. She had not given

10

Grandmother and Step-Grandfather her home address but rather required that the letters be delivered through the parties' attorneys. Grandmother testified that she was not aware of the offer to send letters to the children through their attorneys.

Mother's past relationship with Y.L. appears to have been much of the basis of the trial court's significant-impairment finding.[6] Grandmother's declaration stated that Y.L. was still using this case to maintain his involvement with the children and that his attempts to lift the injunction against him were an attempt to reinsert himself into their lives. Grandmother testified at the hearing that she feared that Y.L. would still have access to the children although she did not state any basis for this fear.

Mother and Y.L. are no longer married. The undisputed evidence in the record showed that Mother and the children no longer resided with Y.L, the children had no contact with him for a year before the hearing, and Mother's contacts with Y.L. were regular but limited to communications about the underlying case. Thus, the only evidence presented during the hearing about Y.L.'s involvement with the family indicated that Mother and Y.L. communicated only about the case and that Y.L. has had no contact with the children.

Parental irresponsibility, poor judgment, and an unstable or chaotic lifestyle may support a finding of significant impairment, but only if those findings are directly related to a specific risk to the child that exists when the petition is filed. *See S.T.*

---

[6]During the hearing, the court, speaking on Mother's prior relationship with Y.L., stated "that was the danger and it's been removed."

at 492.  Grandmother does not indicate any such specific risk.  She stated in her declaration that she worried issues may arise with the children's mental health, that Y.L. may contact the children again, and that the children did not bathe when they visited Mother at an unspecified point in the past.  However, none of these concerns—two of them speculative and one past—constitute either a specific risk or one that existed when the petition was filed; thus, they are insufficient to overcome the fit-parent presumption.  *See id.*; *see also In re J.O.L.*, 668 S.W.3d 160, 170 (Tex. App.—San Antonio 2023, pet. denied).  Thus, Grandmother did not show standing under Section 102.004.

**E.  Standing Under Section 153.432**

Section 153.432 of the Texas Family Code confers standing on a grandparent to petition for possession of and access to a grandchild, but only if the grandparent attaches an affidavit "that contains, along with supporting facts, the allegation that denial of possession of or access to the child by the petitioner would significantly impair the child's physical health or emotional well-being."  Tex. Fam. Code Ann. § 153.432(c); see *H.L.*, 613 S.W.3d at 724.  "A trial court abuses its discretion when it grants access to a grandparent who has not met this standard . . . ."  *In re Derzapf*, 219 S.W.3d 327, 333 (Tex. 2007) (orig. proceeding).

In *H.L.*, we held that the child's grandparents did not have standing under Section 153.432 to seek possession of and access to their grandchild because the facts alleged in their supporting affidavit were insufficient as a matter of law to show that

12

denial of possession or access would have significantly impaired the child's physical health or emotional well-being. *H.L.* at 727. In that case, the grandmother stated in her affidavit that she had a close relationship with the child and that the child had expressed frustration and sadness at having lost contact with her grandparents. *Id.* at 726. The grandmother was concerned that the child would be significantly impaired by her loss of contact with the grandparents because the loss would teach the child that "people can be abandoned" and lead the child to believe that her grandparents did not love her. *Id.*

We noted that, at best, the grandparents' allegations reflected "frustration, anger, or perhaps a 'lingering sadness'" on the part of the child, but were devoid of

> any facts pertaining either directly or indirectly to [the child's] current physical or emotional well-being or to show that [the child] had suffered any significant impairment yet. Instead, [the grandmother] made a conclusory assertion about the results of denial of possession or access and made unsupported predictions about what the lack of possession or access would teach the child in the future.

*Id.* at 727 (citations omitted); *see In re Scheller*, 325 S.W.3d 640, 643–44 (Tex. 2010) (orig. proceeding) (holding that a child's display of anger or isolated instances of bedwetting and nightmares coupled with lay-witness observer testimony that denying access would impair the child were insufficient to show significant impairment); *Derzapf*, 219 S.W.3d at 330 (holding no significant impairment because, even with testimony from a psychologist that it would "not be healthy" to cut off grandparents' contact with the grandchildren, there was no evidence showing that the children

experienced depression, behavior problems, or anything more than "lingering sadness" from being separated from their grandparents); *In re Turan*, No. 13-19-00124-CV, 2019 WL 4871484, at *5 (Tex. App.—Corpus Christi–Edinburg Oct. 2, 2019, orig. proceeding) (mem. op. on reh'g) (holding that grandparent did not meet the significant-impairment standard where she testified that the child had shown a change in emotional well-being since contact had been reduced and that the child had expressed a desire for more contact with grandmother); *In re J.M.G.*, 553 S.W.3d 137, 143 (Tex. App.—El Paso 2018, orig. proceeding) (holding no standing for grandmother who did not allege "any facts pertaining either directly or indirectly to the grandchildren's physical or emotional well-being").

Thus, we must determine if Grandmother's declaration and the evidence adduced at the hearing were sufficient as a matter of law to show that denial of Grandmother's possession of or access to the children would significantly impair the children's physical health or emotional well-being. *See* Tex. Fam. Code Ann. § 153.432.

Grandmother's testimony indicated only that denial of access to the children "may" cause harm to the children's emotional well-being if they are not given "proper psychiatric help." There is no evidence in the record before us of the children suffering any harm nor any evidence of a present threat of harm. *See In re Mays-Hooper*, 189 S.W.3d 777, 778 (Tex. 2006) (orig. proceeding) (holding that a trial court's order for grandparent access unconstitutionally infringed on the parent's fundamental

14

rights where there was no evidence that the parent was unfit, that the child's health and well-being would suffer if the court deferred the decisions, or that the parent intended to exclude grandparent access entirely).

Grandmother contends that the testimony in the case was sufficient, considered with the declaration, to show that she had standing under Section 153.432. To support her position, she relies upon *In re E.R.L.C.*, No. 05-06-01203-CV, 2008 WL 274058, at *1 (Tex. App.—Dallas Feb. 1, 2008, no pet.) (mem. op.). However, her reliance upon that case is misplaced. In *E.R.L.C.*, the affidavit contained the allegation that a specific person was endangering the child. *Id.* The affidavit stated that E.R.L.C.'s mother was intoxicated when taking possession of the child and that the mother was charged with the criminal offense of public intoxication later the same month. *Id.* The affidavit alleged specific dates and specific harms. *Id.* Grandmother's declaration, in contrast, contains no such supporting facts demonstrating significant harm, even considered in conjunction with her subsequent testimony.

We conclude that Grandmother did not show sufficient supporting facts to rise to the level of significant impairment. *See In re S.W.*, No. 02-21-00409-CV, 2022 WL 325385, at *7 (Tex. App.—Fort Worth Feb. 3, 2022, no pet.) (mem. op.). Having appropriately considered the pleadings and evidence, we hold that Grandmother did not, as a matter of law, establish standing under Section 153.432 to assert her claim for possession of and access to the children.

15

**F. Disposition**

We hold that the trial court clearly abused its discretion by not dismissing Grandmother's suit because Grandmother did not show that she has standing under any of the Family Code provisions alleged.

## IV. CONCLUSION

Because Grandmother's lack of standing left the trial court without subject-matter jurisdiction over her claims for conservatorship and for possession and access, the trial court clearly abused its discretion by refusing to dismiss those claims. Therefore, we conditionally grant Mother's petition for writ of mandamus. Only if the trial court does not vacate its order denying Mother's plea to the jurisdiction and dismiss Grandmother's claims for lack of standing will we issue the writ.[7]

/s/ Dana Womack

Dana Womack
Justice

Delivered: January 24, 2025

---

[7]We deny Mother's motion for emergency relief as moot.